**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

ANTHONY JUSTICE and 5TH WHEEL
RECORDS, INC., *each individually and on
behalf of all others similarly situated*,

                              Plaintiffs,

                v.

SUNO, INC.,

                              Defendant.

Civil Action No. 1:25-cv-11739-FDS

<u>**MEMORANDUM IN SUPPORT OF**
**SUNO, INC.'S MOTION TO DISMISS**</u>

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................................1

PROCEDURAL HISTORY & FACTS ALLEGED........................................................................3

LEGAL STANDARD.....................................................................................................................6

ARGUMENT ..................................................................................................................................7

      I.      Plaintiffs Fail to Adequately Allege an Output-Based Claim for Copyright Infringement.............................................................................................................7

      II.     Plaintiffs Fail to State a Claim under Section 1201 Because They Allege Circumvention of a Copy Control, an Act Section 1201 Does Not Prohibit.........11

      III.    Plaintiffs Do Not Allege a Cause of Action under the TCPA. .............................15

CONCLUSION..............................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*All. of Artists & Recording Cos., Inc. v. Gen. Motors Co.*,
162 F. Supp. 3d 8 (D.D.C. 2016) ....................................................................12, 14

*Andersen v. Stability AI Ltd.*,
700 F. Supp. 3d 853 (N.D. Cal. 2023) ..............................................................1, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................6

*Bartz v. Anthropic PBC*,
787 F. Supp. 3d 1007 (N.D. Cal. 2025) ................................................................4

*Bearden v. Honeywell Int'l, Inc.*,
No. 09-cv-1035, 2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010)........................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................7

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
149 F. Supp. 3d 1167 (N.D. Cal. 2015) ................................................................8

*ChampionX, LLC v. Resonance Sys., Inc.*,
726 F. Supp. 3d 786 (E.D. Tenn. 2024)..........................................................19, 20

*CustomGuide v. CareerBuilder, LLC*,
813 F. Supp. 2d 990 (N.D. Ill. 2011) ..................................................................17

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003)................................................................................................16

*e-Steps, LLC v. Ams. Leading Finance, LLC*,
No. 19-cv-1637, 2019 WL 9834429 (D.P.R. Sept. 25, 2019) ..................................9

*Evans v. NBCUniversal Media, LLC*,
No. 21-cv-0984, 2021 WL 4513624 (C.D. Cal. July 23, 2021)..............................8

*Ezell v. Lexington Ins. Co.*,
335 F. Supp. 3d 91 (D. Mass. 2018), *aff'd*, 926 F.3d 48 (1st Cir. 2019)................11

*Fantini v. Salem State Coll.*,
557 F.3d 22 (1st Cir. 2009)......................................................................................7

*Feldman v. Twentieth Century Fox Film Corp.*,
    723 F. Supp. 2d 357 (D. Mass. 2010) ...................................................................18

*Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*,
    713 F. Supp. 2d 215 (S.D.N.Y. 2010) ..................................................................17

*Greer v. Fox News Media*,
    No. 22-1970, 2023 WL 2671796 (2d Cir. Mar. 29, 2023) .....................................19

*Hamlin v. Trans-Dapt of Cal., Inc.*,
    584 F. Supp. 2d 1050 (M.D. Tenn. 2008) ...............................................................17

*Hampshire House Corp. v. Fireman's Fund Ins. Co.*,
    557 F. Supp. 3d 284 (D. Mass. 2021) .....................................................................10

*Harding v. BMW of North Am., LLC*,
    No. 20-cv-61, 2020 WL 5039439 (M.D. Tenn. Aug. 26, 2020) ......................18, 19

*Hattler v. Ashton*,
    No. 16-cv-4099, 2017 WL 11634742 (C.D. Cal. Apr. 20, 2017) ............................15

*Integrity Def. Servs., Inc. v. Wiremasters, Inc.*,
    No. 23-cv-30, 2024 WL 779593 (M.D. Tenn. Feb. 26, 2024) ................................18

*John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*,
    322 F.3d 26 (1st Cir. 2003) .....................................................................................16

*JT IP Holding, LLC v. Florence*,
    No. 20-cv-10433, 2020 WL 5217118 (D. Mass. Sept. 1, 2020) ............................10

*Kadrey v. Meta Platforms, Inc.*,
    No. 23-cv-03417, 2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) ......................1, 9

*Kadrey v. Meta Platforms, Inc.*,
    788 F. Supp. 3d 1026, 1060 (N.D. Cal. 2025) .........................................................4

*Katz v. Pershing, LLC*,
    672 F.3d 64 (1st Cir. 2012) .......................................................................................6

*Lavigne v. Great Salt Bay Comm. Sch. Bd.*,
    146 F.4th 115 (1st Cir. 2025) ..................................................................................10

*Lexmark Int'l v. Static Control Components*,
    387 F.3d 522 (6th Cir. 2004) ..................................................................................15

*Litchfield v. Spielberg*,
    736 F.2d 1352 (9th Cir. 1984) ..................................................................................7

*Marshall v. Scotia Prince Cruises, Ltd.*,
    No. 03-cv-26, 2003 WL 22709076 (D. Me. Nov. 17, 2023) ...............................8, 9

*McDonald v. West*,
    138 F. Supp. 3d 448 (S.D.N.Y. 2015)....................................................................19

*Naicom Corp. v. DISH Network Corp.*,
    No. 21-cv-01405, 2024 WL 1363772 (D.P.R. Mar. 29, 2024)...............................11

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*,
    299 F. App'x 509 (6th Cir. 2008) .........................................................................8

*Patel v. Hughes*,
    No. 13-cv-701, 2014 WL 4655285 (M.D. Tenn. Sept. 16, 2014).........................18

*Pennymac Loan Servs., Inc. v. Morneau*,
    No. 22-cv-30133, 2023 WL 11873008 (D. Mass. Aug. 21, 2023) ........................11

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010).....................................................................................9

*ProCD, Inc. v. Zeidenberg*,
    86 F.3d 1447 (7th Cir. 1996) ...............................................................................19

*Rae v. Woburn Pub. Schs.*,
    113 F.4th 86 (1st Cir. 2024)....................................................................................7

*Rajapske v. Internet Escrow Servs.*,
    No. 21-cv-158, 2022 WL 4783041 (E.D. Tenn. Sept. 30, 2022)..........................18

*Ray v. ESPN, Inc.*,
    783 F.3d 1140 (8th Cir. 2015) ..............................................................................19

*Schatz v. Republican State Leadership Committee*,
    669 F.3d 50 (1st Cir. 2012)......................................................................................7

*Shirokov v. Dulap, Grubb & Weaver, PLLC*,
    No. 10-cv-12043, 2012 WL 1065578 (D. Mass. Mar. 27, 2012) ...........................6

*Simonet v. SmithKline Beecham Corp.*,
    506 F. Supp. 2d 77 (D.P.R. 2007)...........................................................................6

*Soares v. Mass. Dept. of Youth Servs.*,
    No. 12-cv-10573, 2013 WL 5211556 (D. Mass. Sept. 12, 2013).........................15

*Steele v. Turner Broad. Sys., Inc.*,
    607 F. Supp. 2d 258 (D. Mass. 2009) ..................................................................16

*Tingley Sys., Inc. v. CSC Consulting, Inc.*,
    152 F. Supp. 2d 95 (D. Mass. 2001) .................................................17

*TMTV, Corp. v. Mass Prods., Inc.*,
    345 F. Supp. 2d 196 (D.P.R. 2004), *aff'd*, 645 F.3d 464 (1st Cir. 2011) ................................7

*Tremblay v. OpenAI, Inc.*,
    716 F. Supp. 3d 772 (N.D. Cal. 2024) .................................................1, 9

*Tucker v. Sierra Builders*,
    180 S.W.3d 109 (Tenn. Ct. App. 2005) .................................................15

*UMG Recordings, Inc. v. Suno, Inc.*,
    No. 24-cv-11611 (D. Mass.) .................................................2, 4, 11

*United States v. Elcom Ltd.*,
    203 F. Supp. 2d 1111 (N.D. Cal. 2002) .................................................11, 12, 13

*Universal City Studios Prods. LLLP v. Bigwood*,
    441 F. Supp. 2d 185 (D. Me. 2006) .................................................14

*Universal City Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001) .................................................12

*Waggin' Train, LLC v. Normerica, Inc.*,
    No. 09-cv-1093, 2010 WL 145776 (W.D. Tenn. Jan. 8, 2010) .................................................20

*Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*,
    259 F.2d 25 (1st Cir. 2001) .................................................8

## STATUTES

17 U.S.C.
    § 102(b) .................................................19
    § 106(1) .................................................4, 12, 13, 16
    § 106(2) .................................................5, 16
    § 1201(a) ................................................. *passim*
    § 1201(a)(1) .................................................2
    §§ 1201(a)(1)–(a)(2) .................................................12
    § 1201(a)(1)(A) .................................................13
    § 1201(a)(3)(A) .................................................12, 14
    § 1201(b) .................................................2, 12, 13, 14
    § 1201(b)(1) .................................................12, 13
    § 1201(b)(2)(B) .................................................14

Tenn. Code Ann.
  § 47-18-104(a) .............................................................................................3, 15
  § 47-18-104(b) ...................................................................................18, 19, 20
  § 47-18-104(b)(2) ..........................................................................................20
  § 47-18-104(b)(3) ..........................................................................................20

## RULES

D. Mass. Local Rule 7.1 .........................................................................................1

Federal Rule of Civil Procedure 12(b)(6) ......................................................1, 7, 9

Federal Rule of Civil Procedure 9(b) ........................................................3, 19, 20

## OTHER AUTHORITIES

Paul Resnikoff, *Could the Major Labels Lose Against Suno and Udio? A Pressing
  Look at Where These Critical Cases Stand*, DIGITAL MUSIC NEWS,
  https://www.digitalmusicnews.com/dmnpro/weekly/tzVr3pWjQUs-DMN-
  Report-06-August-V2.pdf ...............................................................................4

S. Rep. No. 105-190 (1998) ................................................................................12

U.S. Copyright Office, *The Digit. Millennium Copyright Act of 1998: U.S.
  Copyright Off. Summary* (Dec. 1998),
  https://www.copyright.gov/legislation/dmca.pdf ..............................................2

U.S. Copyright Office, *Section 1201 of Title 17: A Rep. of the Reg. of Copyrights*
  (June 2017)......................................................................................................12

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1, Defendant Suno, Inc. ("Suno") submits this memorandum of law in support of its Motion to Dismiss Counts II, III, and IV of the Amended Complaint.

## PRELIMINARY STATEMENT

In response to Suno's motion to dismiss Plaintiffs' original Complaint for failure to state a claim, Plaintiffs filed an Amended Complaint with over 369 paragraphs of additional allegations. But all that Plaintiffs did is make their Complaint longer. The new allegations do not address the fundamental defect that plagued the original Complaint: Plaintiffs do not identify a single song that came out of Suno's model that they allege infringes the works they asserted. Plaintiffs claim that outputs of Suno's artificial intelligence ("AI") tool are infringing "derivative works" under the Copyright Act. *See* Dkt. No. 27 ¶¶ 449–60 ("Compl."). But even assuming Suno trained its AI model using Plaintiffs' works, it is not the case that music generated by the model is invariably a derivative work of those works as a matter of law. Every court to have confronted the issue has concluded that just because outputs of an AI model are in the plain-English sense "derived" from a set of copyrighted works does not mean that those outputs are all prima facie infringing "derivative works" in the copyright law sense. *See Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417, 2023 WL 8039640, at *2 (N.D. Cal. Nov. 20, 2023); *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 867 (N.D. Cal. 2023); *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 778 (N.D. Cal. 2024). To state a viable infringement claim based on Suno's outputs, Plaintiffs must identify the particular Suno-generated outputs they contend are "substantially similar" to one of the eleven works they are suing over. Plaintiffs have not done so; their Complaint is devoid of any allegation that Suno's model generated any output that bears any resemblance to the asserted works. And that is despite having continuous access to Suno for the ten weeks that have passed since Suno put Plaintiffs on notice of this deficiency when it filed a motion to dismiss their original Complaint—

1

to say nothing of the nearly two years that Suno has been on the market.   Plaintiffs have taken a second bite at the apple; they should not be allowed a third where they have now repeatedly demonstrated that they cannot show that Suno has outputted any music that sounds like Plaintiffs'.

Plaintiffs also assert a claim under section 1201(a) of the Digital Millennium Copyright Act ("DMCA"), following in the footsteps of the major record labels, who moved to amend their complaint to assert the same claim against Suno a few days before Plaintiffs here filed their Amended Complaint.  *See UMG Recordings, Inc. v. Suno, Inc.*, No. 24-cv-11611 (D. Mass.), Dkts. 126 & 134-3.[1]  Section 1201(a) prohibits the circumvention of "technological protection measures" ("TPMs") that restrict *access* to a copyrighted work—that is, TPMs that prevent users from viewing, reading, or listening to works without proper authorization.  But it does not prohibit the circumvention of TPMs that protect a copyright holder's exclusive rights, such as reproduction or distribution, after lawful access has been obtained.  *See* 17 U.S.C. § 1201(a)(1), (b).  This second type of TPM, known as a "copy control," is what would prevent a user from downloading (*i.e.*, reproducing) a copyrighted work.  Plaintiffs' repeated allegation is that Suno, which is able to freely access YouTube videos just as the rest of the world is, circumvented a TPM to "download" content from YouTube.  *See, e.g.*, Compl. ¶ 379 (alleging that Suno "unlawful[ly] circumvent[ed]" technological measures YouTube "implemented to prevent the downloading and copying of YouTube's videos and songs").  This conduct does not violate section 1201 because, by the plain text of the statute, the DMCA does not proscribe the circumvention of copy controls.  And for good reason: Congress chose not to prohibit the act of circumventing copy controls in order to preserve the public's right to engage in fair uses of content that is lawfully accessible.  *See* U.S. Copyright Office, *The Digit. Millennium Copyright Act of 1998: U.S. Copyright Off. Summary*, at

---

[1] The record label plaintiffs' motion to amend is the subject of ongoing briefing, referenced *infra*.

3 (Dec. 1998), https://www.copyright.gov/legislation/dmca.pdf ("USCO DMCA Summary") ("This distinction was employed to assure that the public will have the continued ability to make fair use of copyrighted works."). Plaintiffs thus cannot sustain their section 1201 claim.

Finally, Plaintiffs' Tennessee Consumer Protection Act ("TCPA") claim fails for the same reason their copyright infringement fails—and others too. The exact theory of Plaintiffs' cause of action is hard to parse. The Amended Complaint may be read to allege that Suno violated the TCPA by using Plaintiffs' songs as training data and failing to disclose that Suno-generated outputs are "derived" from Plaintiffs' works. Compl. ¶ 481. To the extent that is Plaintiffs' claim, it sounds in and is preempted by federal copyright law. Plaintiffs also seem to assert that Suno violated the TCPA by "generat[ing] outputs that misappropriate [Plaintiffs'] brands and identifie[r]s." Compl. ¶ 480. But these allegations do not form a cause of action under the TCPA, and, even if they did, Plaintiffs run into the same pleading issue that they do with their derivative works infringement claim: they do not identify any output that might "misappropriate" their "brands" or "identifie[r]s" (whatever that may mean). That failure is fatal to Plaintiffs' TCPA claim, which is governed by the heightened Rule 9(b) pleading standard.

The parties will have ample opportunity to litigate the core issue presented in the Amended Complaint: whether it is fair use to use copyrighted content to derive complex insights regarding how music works, in order to allow people to make songs that recognizably partake of existing genres yet consist of new sounds arranged in novel ways. But Plaintiffs cannot use this litigation to pursue additional theories of liability that have no legal or factual basis. Suno respectfully asks the Court to dismiss Counts II, III, and IV of the Amended Complaint.

## **PROCEDURAL HISTORY & FACTS ALLEGED**

Suno offers an AI tool that allows users to create music. In June 2024, the major record labels sued Suno in this Court, contending that the way Suno built its tool constituted copyright

infringement.  *UMG Recordings*, No. 24-cv-11611, Dkt. No. 1.  In August 2024, Suno answered that Complaint, laying out its case and explaining how the tool works and was created.  *Id.*, Dkt. No. 28 at 1–4 ("Answer"); *see also* Paul Resnikoff, *Could the Major Labels Lose Against Suno and Udio? A Pressing Look at Where These Critical Cases Stand*, DIGITAL MUSIC NEWS, https://www.digitalmusicnews.com/dmnpro/weekly/tzVr3pWjQUs-DMN-Report-06-August-V2.pdf (last visited Oct. 26, 2025).  Ten months later, in June 2025, Plaintiffs filed this tag-along lawsuit, alleging two counts of copyright infringement.  *See* Dkt. 1.  Suno promptly moved to dismiss one of those two counts.  *See* Dkts. 21 & 22.  In response, Plaintiffs (with Suno's consent) filed a superseding Amended Complaint, which they claimed would "address[] the issues raised in the motion to dismiss and incorporate[] additional factual detail."  Dkt. 23 ¶ 4.  The Amended Complaint includes 369 new paragraphs and two entirely new causes of action.  *See* Compl.

As with the initial Complaint, Plaintiffs' Amended Complaint contains two separate claims of copyright infringement.  The first, based on Plaintiffs' interpretation of the Answer Suno filed in *UMG Recordings*, alleges that Suno infringed Plaintiffs' exclusive right to reproduce their sound recordings by using those recordings to train Suno's music-generative AI model.  *See* Compl. ¶¶ 72–82, 442–48; 17 U.S.C. § 106(1).  Plaintiffs' training-based infringement claim is not at issue here, though Suno will ultimately prevail on that claim, too: even assuming Suno did, in fact, use Plaintiffs' sound recordings to train its generative AI model, such a use would be fair use under the Copyright Act.  *See, e.g.*, *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1033 (N.D. Cal. 2025); *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1060 (N.D. Cal. 2025).

Plaintiffs' second copyright infringement claim alleges that "Suno's generative AI model produces near exact replicas or adapt [*sic*] the original versions of [their] copyrighted songs," infringing Plaintiffs' right to prepare "derivative works" based on their sound recordings.  Compl.

¶¶ 449–60; 17 U.S.C. § 106(2).  Yet across sixty-six pages, the Amended Complaint does not cite a single instance of a Suno-created output that even ostensibly sounds like Plaintiffs' works.  It conclusorily asserts, without substantiation, that Suno's AI  model "has generated AI-soundalike music based on the songs of Plaintiffs," Compl. ¶ 13; *see also id.* ¶ 38 (making a similar allegation upon "information and belief").  And it cites a number of outputs created by third parties that allegedly resemble the songs or producer tags of *other* entities.  *See, e.g.*, *id.* ¶¶ 257–66, 273–77.  What it does not include is any output that Plaintiffs contend resembles any work they are asserting in this case.  In fact, the section of the Amended Complaint titled "Specific Allegations as to Each Registered Work in Exhibit A"  contains **no reference to outputs at all**.  *See id.* ¶¶ 164–229.

Similarly, in support of their TCPA claim, Plaintiffs allege that Suno "ingested" Plaintiffs' songs and their "distinctive identifiers," including "names" and "producer tags," "into its AI model(s)" without "consent, license, or compensation." *Id.* ¶¶ 479–80.  According to Plaintiffs, this "ingest[ion]" resulted in outputs "that misappropriate [Plaintiffs'] brands and identifies [*sic*] in order to directly compete with in [*sic*] the same marketplace." *Id.*  Again, Plaintiffs do not cite a single output that they claim "misappropriate[s]" Plaintiffs' works, "brands," or identifie[r]s."  Plaintiffs further claim that Suno "marketed" these wholly unidentified outputs as "'new' or 'original' while concealing" that they were "derived" from Plaintiffs' works.  *Id.* ¶ 481.

Plaintiffs' section 1201 claim is based on Suno's alleged act of circumventing certain TPMs put in place by YouTube in the course of obtaining audio from YouTube to train its AI model.  Specifically, Plaintiffs allege that Suno "cop[ied]" Plaintiffs' songs from YouTube for use in its training data by circumventing YouTube's "rolling cipher," a TPM YouTube "implemented to prevent **the downloading and copying** of YouTube's videos and songs." *Id.* ¶ 379 (emphasis added); *id.* ¶ 12 ("Suno circumvented technological **measures designed specifically to prevent**

*such unauthorized copying.*" (emphasis added)).  Critically, Plaintiffs do not allege that YouTube imposes technological measures that restrict access to content for watching or listening.  In fact, they concede that "YouTube users can stream (*i.e.*, view) audiovisual content (the 'videos')." *Id.* ¶¶ 362–63.  Rather, Plaintiffs allege that users are "*not* permitted to make permanent, unrestricted *copies* of the videos (or any songs contained in those videos) through YouTube." *Id.* ¶ 362 (emphasis added).  And, accordingly, YouTube employs a "rolling cipher" TPM that "prevent[s] external sites or services from directly *downloading* protected YouTube videos." *Id.* ¶ 371 (emphasis added); *see also* ¶ 373 (the "rolling cipher algorithm . . . is specifically designed to stop external access of YouTube videos (e.g., downloading, copyright [*sic*], distributing videos)").  Plaintiffs allege that Suno circumvented this prohibition using "stream-ripping tools" that "enable the unauthorized downloading of videos and songs from YouTube." *Id.* ¶ 375.  Plaintiffs conclude that circumventing YouTube's rolling cipher TPM allowed Suno to "unlawfully acquire[] complete *copies* of Plaintiffs'" songs. *Id.* ¶ 465 (emphasis added).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted).[2]  In deciding a motion to dismiss, the court "must accept as true all well-pleaded facts[,] indulging all reasonable inferences in [the plaintiff's] favor." *Fantini v. Salem State Coll.*, 557 F.3d 22, 26 (1st Cir. 2009)

---

[2] Because no class has been certified, "the court must dismiss the complaint in its entirety if the named plaintiff[s] ha[ve] no cause of action in [their] own right." *Simonet v. SmithKline Beecham Corp.*, 506 F. Supp. 2d 77, 81 (D.P.R. 2007); *Shirokov v. Dulap, Grubb & Weaver, PLLC*, No. 10-cv-12043, 2012 WL 1065578, at *33 n.25 (D. Mass. Mar. 27, 2012) ("At this stage of the litigation, the District Court must dismiss [the named plaintiff's] claims if he has not stated a cause of action in his own right." (citing *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012)).

(citation and quotation marks omitted).  However, the "federal pleading standard requires more than labels and conclusions, and a formulaic recitation of a cause of action will not do." *Rae v. Woburn Pub. Schs.*, 113 F.4th 86, 98 (1st Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotation marks omitted).  Accordingly, courts "isolate and ignore statements in the complaint that simply offer legal labels and conclusions" and take only the "complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true," determining whether those facts "plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (1st Cir. 2012) (citations omitted).  Where they do not, dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

### I.  Plaintiffs Fail to Adequately Allege an Output-Based Claim for Copyright Infringement.

Plaintiffs allege that Suno infringed their right to prepare derivative works based on their songs by "transmitting and distributing infringing outputs" that are "near exact replicas or adapt the original versions" of those songs.  Compl. ¶¶ 452–53.  As in their original Complaint, this claim fails for the simple reason that ***Plaintiffs have not identified a single allegedly infringing output created by Suno.***

To be an infringing derivative work, a song generated by Suno's AI tool would have to reprise substantial copyrightable expression from a pre-existing original work.  *See generally TMTV, Corp. v. Mass Prods., Inc.*, 345 F. Supp. 2d 196, 211 (D.P.R. 2004), *aff'd*, 645 F.3d 464 (1st Cir. 2011) ("Courts interpret the [Copyright] Act to mandate that derivative work that is substantially similar to the original work upon which it is based is an infringement." (quotation and citation omitted)); *Litchfield v. Spielberg*, 736 F.2d 1352, 1358 (9th Cir. 1984) (affirming summary judgment where "no reasonable jury could conclude that" the original work and the

allegedly derivative work "were substantially similar in their ideas and expression").   To state a viable claim that Suno has generated infringing derivatives, Plaintiffs thus must allege facts—not just the conclusory assertions proffered here—that Suno created "substantially similar" replicas of the works-in-suit.  *See, e.g.*, *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.2d 25, 33 (1st Cir. 2001) (holding that, to establish copyright infringement, the plaintiff must show that "the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works 'substantially similar'"); *see also Marshall v. Scotia Prince Cruises, Ltd.*, No. 03-cv-26, 2003 WL 22709076, at *4 (D. Me. Nov. 17, 2023) ("A work is not derivative unless it is substantially similar to prior copyrighted work.").

The reason courts require such allegations is because the law is that assessing whether Work B is actionably similar to asserted Work A requires actually *comparing* the two works.  Courts regularly dismiss claims where the complaints offer only conclusory assertions about an allegedly infringing work being substantially similar to another, as such assertions make it impossible to conduct even a preliminary comparison—and thus fail to state a plausible claim for relief.  *See, e.g.*, *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015) (dismissing copyright infringement claim where the complaint "ma[d]e only general allegations" that allegedly infringing works were "derived from and substantially similar to" plaintiffs' works, without even identifying "representative acts of infringement"); *Evans v. NBCUniversal Media, LLC*, No. 21-cv-0984, 2021 WL 4513624, at *5 (C.D. Cal. July 23, 2021) (granting motion to dismiss where plaintiff did not attach the allegedly infringing work, "[did] not allege any specific details," and provided only "conclusory allegations"); *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008) (affirming dismissal where plaintiff "failed to even allege which, if any, of defendants' materials were

infringing"); *e-Steps, LLC v. Ams. Leading Finance, LLC*, No. 19-cv-1637, 2019 WL 9834429, at *4 (D.P.R. Sept. 25, 2019) (dismissing copyright infringement claim pursuant to Rule 12(b)(6) where the Complaint "fail[ed] to state how [the copyrighted work] and the allegedly infringing softwares are substantially similar"). Indeed, the issue of whether an accused work reprises too much copyrightable expression from the original is "one that is the least susceptible of helpful generalizations," since "the works themselves supersede and control contrary descriptions of them." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63–64 (2d Cir. 2010).

The failure to identify any allegedly infringing outputs has already proved fatal to output-based infringement claims in several other generative AI cases filed in the Northern District of California. As one court put it, to pursue a claim that the outputs of an AI tool are infringing, plaintiffs must adequately allege "that the outputs (or portions of the outputs) are similar enough to the plaintiffs' [works] to be infringing derivative works." *Kadrey*, 2023 WL 8039640, at *1 (relying on *Litchfield*); *see also Andersen*, 700 F. Supp. 3d at 868 (finding, in a generative AI case, that "copyright claims based on a derivative theory can[not] survive absent" any allegation of substantially similar outputs); *Tremblay*, 716 F. Supp. 3d at 778 (dismissing infringement claim where the plaintiffs "fail[ed] to . . . allege that any particular output is substantially similar—or similar at all—to their books" (relying on *Litchfield*)). The law on this issue in the First Circuit is no different than in the Ninth. *See Marshall*, 2003 WL 22709076, at *4 (relying on *Litchfield*).

Thus, here too, Plaintiffs' derivative works claim fails because they have not identified any derivative output that is actionably similar to one of their asserted works. Plaintiffs' claim relies on their general and conclusory statement, on "information and belief," that "infringing works produced by Suno are substantially similar . . . to the songs of Plaintiffs." Compl. ¶ 38; *see also*

*id.* ¶¶ 13, 453.[3]  Plaintiffs offer no explanation as to why, if Suno's model truly does produce "near exact replicas" of their copyrighted songs, Plaintiffs need to make such an allegation on information and belief.  Suno's tool is publicly available; Plaintiffs have been and remain free to use it to see what outputs it generates.  Despite this, Plaintiffs have offered nothing more than speculation, which cannot sustain a cause of action. *See Lavigne v. Great Salt Bay Comm. Sch. Bd.*, 146 F.4th 115, 128 (1st Cir. 2025) (affirming dismissal where the plaintiff's allegation was "based solely on her 'information and belief'" of unlawful conduct; "the phrase 'information and belief' does not excuse 'pure speculation'"); *JT IP Holding, LLC v. Florence*, No. 20-cv-10433, 2020 WL 5217118, at *7 (D. Mass. Sept. 1, 2020) (dismissing claim based on "information and belief" where the relevant facts were not "peculiarly within the possession and control of the defendant").

At bottom, Plaintiffs' amended derivative works claim does what all of the output-based claims in the other generative AI cases did that got them dismissed: it asserts in conclusory fashion that there are infringements happening, without identifying what specific content supposedly infringes the exclusive rights of the works allegedly infringed.  Just as they did in their original complaint, Plaintiffs have simply failed to do what the law requires to state a claim that outputs created through Suno infringe their derivative work rights.  Plaintiffs' derivative works claim should therefore be dismissed with prejudice and without leave to amend.  *See, e.g.*, *Hampshire House Corp. v. Fireman's Fund Ins. Co.*, 557 F. Supp. 3d 284, 304 (D. Mass. 2021) (dismissing amended complaint for failure to cure defects from original complaint and denying motion to

---

[3] Though not the basis of Suno's Motion to Dismiss, to the extent Plaintiffs claim that any output created through Suno's tool directly samples a work owned by Plaintiffs (in the manner of a collage), Plaintiffs misunderstand Suno's technology.  Suno's tool exclusively generates new sounds, rather than stitching together samples. *See* Answer at 6–8.

further amend); *Ezell v. Lexington Ins. Co.*, 335 F. Supp. 3d 91, 99 (D. Mass. 2018), *aff'd*, 926 F.3d 48 (1st Cir. 2019) (dismissing complaint with prejudice for the same reason).

## II. Plaintiffs Fail to State a Claim under Section 1201 Because They Allege Circumvention of a Copy Control, an Act Section 1201 Does Not Prohibit.

Plaintiffs also allege that Suno violated section 1201(a) of the DMCA by circumventing TPMs put in place by YouTube "to "prohibit mass downloading." Compl. ¶¶ 462–66.[4]  Even accepting those allegations as true, they fail to state a claim for relief.  Plaintiffs in *UMG Recordings* recently filed a motion to amend their Complaint to assert a section 1201 claim against Suno based on very similar allegations.  *See UMG Recordings*, No. 24-cv-11611, Dkts. 126 & 134-3 ¶¶ 51–58, 110–117.  For the exact reason that the *UMG* plaintiffs' Motion to Amend is futile, Plaintiffs' section 1201(a) cause of action fails to state a claim—namely, Plaintiffs have alleged only that Suno has circumvented a *copy control*, an act that is not prohibited by section 1201.  *See UMG*, No. 24-cv-11611, Dkts. 131 & 155-1 (articulating why the label plaintiffs' allegation that Suno violated section 1201 by circumventing YouTube's "rolling cipher" TPM is inconsistent with the text, context, legislative history, and purpose of that statute).

Section 1201 "prohibit[s] certain efforts to unlawfully circumvent protective technologies, while at the same time preserving users' rights of fair use" by allowing others.  *United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1119 (N.D. Cal. 2002).  The statute strikes this balance by

---

[4] Though the Amended Complaint refers vaguely to other "Protected Platforms," *see* Compl. ¶¶ 463–75, Plaintiffs have not alleged facts related to TPMs used by any platform other than YouTube, nor have they offered any allegation of how Suno circumvented those TPMs.  Plaintiffs thus cannot sustain a claim as to any other website.  *See, e.g., Naicom Corp. v. DISH Network Corp.*, No. 21-cv-01405, 2024 WL 1363772, at *16 (D.P.R. Mar. 29, 2024) (plaintiffs' failure to mention "any specific conduct" relating to their claim rendered it "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture"); *Pennymac Loan Servs., Inc. v. Morneau*, No. 22-cv-30133, 2023 WL 11873008, at *2 (D. Mass. Aug. 21, 2023) ("Without more, Plaintiff's allegations that certain events 'could' have happened . . . are too hypothetical or speculative to support a plausible claim.").

distinguishing between both (1) the types of TPMs that can be placed on a copyrighted work, and (2) the kinds of acts that violate the law.  Concerning the first distinction, section 1201**(a)** targets "technological measures that effectively control *access* to a copyrighted work." *Id.* at 1119 (emphasis in original); *see* 17 U.S.C. §§ 1201(a)(1)–(a)(2). These are commonly referred to as "**access controls**." *See* U.S. Copyright Office, *Section 1201 of Title 17: A Rep. of the Reg. of Copyrights*, at 6 (June 2017) ("USCO 2017 Report").  Access controls prevent the public from viewing, reading, listening to, or otherwise experiencing the content of a work—for example, by "encrypt[ing]" the content of a book so it cannot be read or "scrambl[ing]" an audio file so it cannot be played.  17 U.S.C. § 1201(a)(3)(A).  The quintessential access control is a "password requirement limiting access to a website to paying customers."  USCO 2017 Report at 6.

Section 1201**(b)** targets TPMs "that effectively protect[] a right of a copyright owner under this title," 17 U.S.C. § 1201(b)(1), including the copyright owner's exclusive right of reproduction, *see id.* § 106(1). These are commonly referred to as "**copy controls**."  USCO 2017 Report at 6.  Copy control measures kick in after a user has gained access to a work by, *e.g.*, "preventing the copying of an e-book after it has been downloaded to a user's device." USCO 2017 Report at 6.  In that sense, they are "designed to *permit access* to a work but *prevent copying* of th[at] work." *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 441 (2d Cir. 2001) (emphasis in original).  The quintessential copy control is a system that prohibits the copying of an audio tape.  *See, e.g.*, *All. of Artists & Recording Cos., Inc. v. Gen. Motors Co.*, 162 F. Supp. 3d 8, 10–11 (D.D.C. 2016) (describing a system that "prevents any copies being made from [] copies" of digital audio tapes).  Such a system does not prohibit a user who possesses the tape from listening to it, which means it is not an access control.  17 U.S.C. § 1201(a); *see also* S. Rep. No. 105-190 at 12 (1998)  (access controls "limit[] access to the plain text of a work").  But it does prevent that

user from creating an unauthorized reproduction of the tape, and in so doing "effectively protects a right of a copyright owner," *id.* § 1201(b)(1)(A)—that is, the reproduction right, *id.* § 106(1).

On the second distinction—the kinds of acts that violate the law—section 1201 imposes different limitations on access controls and copy controls. "With regard to the first category [*i.e.*, access controls], Congress banned both the act of circumventing access control restrictions as well as trafficking in and marketing of devices that are primarily designed for such circumvention." *Elcom*, 203 F. Supp. 2d at 1119–20. Section 1201(a)(1)(A) provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). Section 1201(a)(2), meanwhile, provides, in pertinent part, that "[n]o person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof" that either is primarily designed to circumvent access controls or has limited commercial purpose beyond such circumvention. 17 U.S.C. § 1201(a)(1)(A). Section 1201(b) contains a parallel trafficking prohibition on any technology or device that either is primarily designed to circumvent *copy controls* or has limited commercial purpose beyond such circumvention. 17 U.S.C. § 1201(b)(1). However, section 1201(b) does not have a parallel circumvention prohibition. In other words, unlike for access controls, Congress did not ban the ***act of circumventing*** copy controls; it banned only ***trafficking*** in devices primarily designed to circumvent copy controls. *See Elcom*, 203 F. Supp. 2d at 1120. This was intentional: because fair use "allow[s] a certain amount of direct copying for certain uses, without the permission of the copyright owner," *id.* at 1119, penalizing circumvention of copy controls would prohibit copying that fair use explicitly authorizes. Section 1201(b)'s limited scope therefore balances copyright owners' rights against the rights of fair users.

Plaintiffs' claim that Suno violated section 1201**(a)** by "bypassing protections that restrict consumers to authorized playback and prohibit mass downloading." *See* Compl. ¶ 466; *see also id.* ¶¶ 461–75.[5]  But a protection that "prohibit[s] mass downloading" is not an access control; it is a copy control.  *See* 17 U.S.C. § 1201(b); *All. of Artists*, 162 F. Supp. 3d at 10–11 (a system that "prevents any copies being made from [] copies" of digital audio tapes is a copy control).  The Amended Complaint repeatedly confirms that YouTube does *not* deploy any access controls under the meaning of the statute: as Plaintiffs explain, "YouTube users can stream (*i.e.*, view) audiovisual content (the 'videos')[.]"  *See* Compl. ¶ 362.  The content is not "scrambled" or "encrypted," nor does a user need to "avoid, bypass, remove, deactivate, or impair" any technological barriers in order to view it.  17 U.S.C. § 1201(a)(3)(A).  No owner-authorized credentials or passwords are required to "gain access to the work."  *Id.* § 1201(a)(3)(B).  On Plaintiffs' own account, YouTube is the paradigmatic online platform whose content is accessible without circumventing any TPM.

Instead, Plaintiffs allege that YouTube prohibits users from "mak[ing] permanent, unrestricted ***copies*** of the videos (or any songs contained in those videos) through YouTube."  *Id.* ¶ 362 (emphasis added).  The TPM that Plaintiffs assert YouTube employs to enforce this prohibition and that Suno allegedly circumvented is a ***copy control.***  In particular, Plaintiffs allege that YouTube uses a "rolling cipher," which was specifically "***implemented to prevent the downloading*** and ***copying*** of YouTube's videos and songs."[6]  *Id.* ¶ 379 (emphasis added); *see also id.* ¶ 12 ("Suno circumvented the YouTube ***technological measures designed specifically to***

---

[5] Plaintiffs' allegations regarding YouTube's Terms of Service, *see* Compl. ¶¶ 368, 382, 472, are irrelevant, as those legal terms are not a "technological measure."  *See* 17 U.S.C. § 1201(b)(2)(B).

[6] "Downloading" content unquestionably implicates a copyright owner's right of reproduction.  *See, e.g.*, *Universal City Studios Prods. LLLP v. Bigwood*, 441 F. Supp. 2d 185, 190 (D. Me. 2006) ("[B]y downloading files containing the Motion Pictures, Defendant infringed Plaintiffs' exclusive right of reproduction.").

*prevent . . . unauthorized copying*." (emphasis added)); *id.* ¶ 373 (the "rolling cipher algorithm" "is specifically designed to stop external access of YouTube videos (e.g., downloading, copyright [*sic*], distributing videos)").   This is the textbook definition of a copy control, not an access control.  *See* 1997 Hearings at 48 (testimony of Marybeth Peters, Register of Copyrights) (describing "technology that blocks users from downloading copies" as a "measure[] that prevent[s] acts of infringement, rather than access"); *Lexmark Int'l v. Static Control Components*, 387 F.3d 522, 547 (6th Cir. 2004) (reversing grant of preliminary injunction and holding that a measure that prevented "making use of" a copyrighted work was not an access control where the work was "otherwise accessible").  Because section 1201 does not prohibit circumvention of copy controls, Plaintiffs' claim must be dismissed with prejudice.  *See Hattler v. Ashton*, No. 16-cv-4099, 2017 WL 11634742, at *5 (C.D. Cal. Apr. 20, 2017) (dismissing Section 1201(a) claim where the plaintiff alleged that the defendant had circumvented a copy control); *see also Soares v. Mass. Dept. of Youth Servs.*, No. 12-cv-10573, 2013 WL 5211556, at *4 (D. Mass. Sept. 12, 2013) (dismissing claims with prejudice where repleading "would be futile" under governing law).

## III.   Plaintiffs Do Not Allege a Cause of Action under the TCPA.

Finally, Plaintiffs assert an unfair competition claim under the Tennessee Consumer Protection Act.  *See* Tenn. Code Ann. § 47-18-104(a); Compl. ¶¶ 476–85.  While difficult to decipher, the Amended Complaint appears to contemplate two potential theories of harm: (1) that Suno engaged in deceptive conduct by failing to disclose that its outputs are "derived" from Plaintiffs' works; and (2) that Suno outputs "misappropriate" Plaintiffs' "brands and identifie[r]s." *See* Compl. ¶¶ 479–81.  Each iteration of this claim fails.[7]

---

[7] In addition to the substantive pleading issues, the TCPA "limits private actions to 'individual claims.'  Accordingly, class actions cannot be maintained under the TCPA." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 n.9 (Tenn. Ct. App. 2005) (quoting § 47-18-109(a)(1)); *see also*

*First*, Plaintiffs appear to claim that because Suno "ingested" their songs for use as training data "without consent, license, or compensation" but did not disclose that its outputs are allegedly "derived from misappropriated works," it engaged in deceptive conduct. *See* Compl. ¶¶ 479–481. This application of the TCPA is squarely preempted by copyright law. "Federal copyright law preempts rights under state law when they are the equivalent of those granted under the Copyright Act." *John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 322 F.3d 26, 44 (1st Cir. 2003); *see also Steele v. Turner Broad. Sys., Inc.*, 607 F. Supp. 2d 258, 263 (D. Mass. 2009) (claims are preempted if "1) the work involved falls within the subject matter of copyright and 2) the state law claim incorporates no extra element that is qualitatively different from the copyright claim" (citation and quotation marks omitted)). At core, Plaintiffs' claim is simply that Suno created derivative works based on Plaintiffs' songs without compensating or crediting Plaintiffs. This claim sounds in copyright law, which grants copyright owners the exclusive right to control the "reproduc[tion]" and "prepar[ation] of derivative works based upon" their copyrighted works. *See* 17 U.S.C. § 106(1), (2); *see also Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33–35 (2003) (refusing to recognize a claim that would extend the Lanham Act to control "communicative products," which are the traditional realm of copyright).[8]

Plaintiffs' claim involves no "extra element" beyond what would be required for an infringement cause of action—that is, proof of actionable "copying" or "preparation of derivative

---

*Bearden v. Honeywell Int'l, Inc.*, No. 09-cv-1035, 2010 WL 3239285, at *8–10 (M.D. Tenn. Aug. 16, 2010) (noting that "Tennessee law is clear that a plaintiff may not bring a TCPA claim on behalf of a class" and striking any class allegations). Plaintiffs may not assert a TCPA claim on behalf of any class or subclass; insofar as the Court does not dismiss Plaintiffs' TCPA claim in full, the class allegations should be stricken.

[8] As noted above, any theory of infringement of the derivative work right based on Suno's alleged use of Plaintiffs' recordings as training data is legally unsupported and has been routinely rejected by other courts. *See supra* at 1–2. The infirmity of Plaintiffs' theory of infringement, however, does not change that it arises under federal copyright law.

works" without authorization. *See Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 105 (D. Mass. 2001) (elements that "merely alter the scope of the action and not its nature" such as "awareness, intent or commercial misconduct" cannot save a claim from preemption). Plaintiffs' allegation that Suno "deceptively marketed [its] outputs as 'new' or 'original'" without disclosing that the outputs are "derived from" their songs does not move the needle. *See* Compl. ¶ 481. Even assuming that Suno made any such representations (which are not alleged) and that such representations would be false or deceptive (they are not), Plaintiffs are describing a violation of their copyright rights in other words. In *Hamlin v. Trans-Dapt of Cal., Inc.*, 584 F. Supp. 2d 1050 (M.D. Tenn. 2008), for example, the plaintiff brought a TCPA claim alleging that the defendant "misrepresented Plaintiff's ideas and work to consumers as if they were Defendant's own." *Id.* at 1061. The court dismissed the claim as preempted, finding that "the rights [the plaintiff] seeks to vindicate under the TCPA are precisely equivalent to the rights he seeks to vindicate under the Copyright Act"—that is, "that the defendant reproduced and distributed derivative works based on the plaintiff's copyrighted work." *Id.* at 1062; *see also id.* at 1061–62 (collecting cases). Other courts applying both the TCPA and similar consumer protection statutes have come to the same conclusion, determining that state law claims alleging that the defendant engaged in reverse "passing off"—that is, claiming the plaintiff's work as its own (or otherwise failing to credit the plaintiff)—are preempted by federal copyright law.[9]

---

[9] *See, e.g.*, *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F. Supp. 2d 215, 232 (S.D.N.Y. 2010) ("[C]laims alleging misrepresentations of the ownership or origin of an idea do not differ from the inherent misrepresentations that accompany unauthorized copying and reproduction of another's copyrighted work." (citation and quotation marks omitted)); *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 998–999 (N.D. Ill. 2011) (similar); *Tingley*, 152 F Supp. 2d at 105 (finding that an allegation of "failure to obtain permission for use or continued use" did not constitute an "extra element"); *Feldman v. Twentieth Century Fox Film Corp.*, 723 F. Supp. 2d 357, 368 (D. Mass. 2010) (collecting cases).

The same result is warranted here: to the extent Suno deceived consumers because it "l[ed] consumers to believe" that any infringing outputs were either licensed or "new" and "original" (which they are), Plaintiffs' claim is for copyright infringement and cannot be the basis of a cause of action under the TCPA. *See Patel v. Hughes*, No. 13-cv-701, 2014 WL 4655285, at *8 (M.D. Tenn. Sept. 16, 2014) (dismissing TCPA claim that the defendant sold software "under the presumption that [the defendant] was acting on a license," as "precisely equivalent to the rights protected under the Copyright Act" (quotations and citations omitted)).[10]

*Second*, Plaintiffs allege that Suno violated the TCPA by "us[ing] [Plaintiffs'] distinctive identifiers—including names, voices, and producer tags—to generate outputs that misappropriate their brands and identifie[r]s in order to directly compete with in the same marketplace." Compl. ¶ 480. Under the version of the statute that has been in effect for over a decade, "an individual cannot file an action for damages for an unfair or deceptive practice other than those specifically enumerated in subsection (b)" of section 47-18-104 of the TCPA. *Harding v. BMW of North Am., LLC*, No. 20-cv-61, 2020 WL 5039439, at *3 (M.D. Tenn. Aug. 26, 2020); *see also, e.g.*, *Integrity Def. Servs., Inc. v. Wiremasters, Inc.*, No. 23-cv-30, 2024 WL 779593, at *2 (M.D. Tenn. Feb. 26, 2024) ("To state a viable claim under the TCPA, a plaintiff's claim must be based on one of the specific subsections of Tenn. Code Ann. § 47-18-104(b)." (citation and quotation marks omitted)). Plaintiffs do not identify the provision of section 47-18-109(b) under which their claim arises (a defect that may itself be fatal, *see Rajapske v. Internet Escrow Servs.*, No. 21-cv-158, 2022 WL 4783041, at *3 (E.D. Tenn. Sept. 30, 2022)), and a review of the list makes clear that a claim that Suno "misappropriat[ed]" Plaintiffs' "brands" is not a cause of action under the

---

[10] For the same reason, any claim that Suno "unfairly competed" by "reproducing" a "sample[]" of Plaintiffs' songs, *see* Compl. ¶ 94, is a claim of copyright infringement and is preempted.

TCPA.[11]  But even insofar as Plaintiffs point to some enumerated category in section 47-18-104(b) that this theory might be read into, that will not save their claim: Plaintiffs have failed to allege *facts* sufficient to any violation of the statute.

Actions under the TCPA are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) and must be alleged with specificity, including as to the "time, place, and content of the alleged" violation and "the injury resulting from" that violation. *See ChampionX, LLC v. Resonance Sys., Inc.*, 726 F. Supp. 3d 786, 833 (E.D. Tenn. 2024) (citation and quotation marks omitted); *see also Harding*, 2020 WL 5039439, at *2 ("District courts in Tennessee have held that Rule 9(b) applies to TCPA claims.").  The issue that proves fatal to this claim is the same as for Plaintiffs' infringement claim: across 66 pages and nearly 500 paragraphs, Plaintiffs do not cite a single output that even arguably sounds like their songs, let alone that "misappropriates" Plaintiffs' "brands" or "identifie[r]s"—whatever that may mean.  And they certainly do not allege facts sufficient to support the conclusion that any unidentified outputs are likely to cause

---

[11] It is entirely unclear what Plaintiffs mean by "brands and identifie[r]s" in this context.  Insofar as Plaintiffs are referring to outputs that resemble their musical *styles*, such a claim would be preempted under the Copyright Act.  While "copyright does not protect styles," *McDonald v. West*, 138 F. Supp. 3d 448, 455 (S.D.N.Y. 2015), copyright preemption sweeps more broadly than copyright protection, "prevent[ing] states from giving special protection to subject matter that Congress has decided should be in the public domain," *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996) (Easterbrook, J.).  It is thus well-established that "ideas"—which are excluded from copyright protection by section 102(b)—fall within the subject matter of copyright for preemption purposes.  *See, e.g.*, *Greer v. Fox News Media*, No. 22-1970, 2023 WL 2671796, at *1 (2d Cir. Mar. 29, 2023) ("[A]lthough copyright protection 'does not extend to an idea,' we have explained that where 'the ideas that are the subject of the claim were fixed in writing—whether or not the writing itself is at issue—the claim is within the subject matter of copyright' for purposes of preemption." (citation omitted)).  Because artistic styles are just the kind of ideas excluded from the universe of copyright protection, they, too, are within copyright's subject matter.  *See* 17 U.S.C. § 102(b); *McDonald*, 138 F. Supp. 3d at 455 ("copyright does not protect styles" "[f]or the same reason" copyright "does not protect ideas").  Nor can Plaintiffs survive preemption by reframing their claim through the lens of appropriation, *see, e.g.*, Compl. ¶ 480, as the crux of their claim is still an attempt to monopolize an unprotectable style.  *See Ray v. ESPN, Inc.*, 783 F.3d 1140, 1142–43 (8th Cir. 2015) (name-appropriation claim preempted).

confusion, *see* Tenn. Code Ann. § 47-18-104(b)(2), (3), that any outputs have been "falsely pass[ed] off," *id.* § (b)(1), or that any other enumerated category of section 47-18-104(b) has been violated.  Nor have Plaintiffs alleged any concrete harm they have suffered caused by Suno purportedly "misappropriat[ing]" their "brands" and "identifiers."   Though Plaintiffs make conclusory reference to "ascertainable losses," including "damage to their personal brands and reputations," Compl. ¶ 484, Plaintiffs have not actually alleged facts showing that they have experienced *any* harm—much less that any such harm "emanate[s] from" Suno's alleged "misappropriat[ion]."   *See Waggin' Train, LLC v. Normerica, Inc.*, No. 09-cv-1093, 2010 WL 145776, at *4–5 (W.D. Tenn. Jan. 8, 2010) ("[T]o establish a TCPA claim, a plaintiff must demonstrate that it actually has suffered damages that are more than conjectural, and that emanate from the defendant's unfair or deceptive actions"; dismissing claim where the plaintiff could not show "in what ways [any alleged] damage has manifested itself—hence, [their allegations] are merely conclusory."); *ChampionX*, 726 F. Supp. 3d at 834 (dismissing TCPA claim where the complaint "contain[ed] no specific allegations of how [the plaintiff] suffered harm as a result of" the allegedly violative conduct beyond "threadbare allegation[s]").

Especially where Plaintiffs are subject to Rule 9(b)'s heightened pleading standard, vague references to unidentified "soundalike" outputs do not pass muster.  Plaintiffs have not asserted facts that would establish a violation of a provision of section 47-18-109, and their TCPA claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Suno respectfully requests that the Court dismiss with prejudice Plaintiffs' Second, Third, and Fourth Causes of Action for failure to state a claim.

Dated: October 27, 2025

Respectfully submitted,

*/s/ Brittany N. Lovejoy*
Andrew M. Gass (*pro hac vice*)
Brittany N. Lovejoy (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
andrew.gass@lw.com
britt.lovejoy@lw.com

Grace McLaughlin (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
grace.mclaughlin@lw.com

Shlomo Fellig (BBO# 699643)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
shlomo.fellig@lw.com

*Counsel for Defendant Suno, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent October 27, 2025 to those identified as non-registered participants.

*/s/ Brittany N. Lovejoy*

Brittany N. Lovejoy
