# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY JUSTICE and 5TH WHEEL RECORDS, INC. and MY HEARTLAND PUBLISHING, LLC, *each individually and on behalf of all others similarly situated*,<br><br>    *Plaintiffs*,<br><br><br>    v.<br><br><br>SUNO, INC.,<br><br>    *Defendant*. | Case No. 1:25-cv-11739-FDS |

<u>**PLAINTIFFS' RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SUNO, INC.'S MOTION TO DISMISS COUNTS TWO, THREE, AND FOUR OF PLAINTIFFS' FIRST AMENDED COMPLAINT**</u>

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. 2

TABLE OF AUTHORITIES ........................................................................................... 3

I.     INTRODUCTION ................................................................................................ 6

II.    FACTUAL BACKGROUND .............................................................................. 10

III.   LEGAL STANDARD ........................................................................................ 12

IV.    ARGUMENT ..................................................................................................... 13

   A.   Plaintiffs Allege Output Infringement.......................................................... 13

      i.     Suno Misstates the Pleading Standard for Copyright Infringement .......................... 13

      ii.    Suno Incorrectly Interprets North District of California Decisions .......................... 15

      iii.   Pleading On "Information and Belief" is Common and Appropriate Here............... 16

   B.   Suno Circumvents Access Controls on YouTube and Other Platforms......................... 17

      i.     Plaintiffs Allege Violation of § 1201(a) Through Suno's Circumvention of Access
             Controls on YouTube and Other Platforms ..................................................... 17

      ii.    Suno's "Purpose" for Circumvention is Irrelevant Under § 1201(a)(1).................... 21

   C.   Tennessee Unfair Competition........................................................................ 24

      i.     Amendment Is Proper Under Rule 15(a)(2) ............................................... 24

      ii.    Tennessee Unfair Competition is Not Preempted by Copyright Law ....................... 25

V.     CONCLUSION.................................................................................................. 26

# TABLE OF AUTHORITIES

## CASES

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*,
307 F. Supp. 2d 1085, 1096 (N.D. Cal. 2004) ........................................................................... 18

*Andersen v. Stability AI Ltd.*,
700 F. Supp. 3d 858 (N.D. Cal. 2023) ................................................................................... 6, 14

*Arista Records, LLC v. Doe 3*,
604 F.3d 110, 120 (2d Cir. 2010) .............................................................................................. 16

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ............................................................................................... 6, 11, 12

*Aspen Tech., Inc. v. Walter*,
No. 19-cv-11292-GAO, 2019 WL 4795551, at *4 (D. Mass. Sept. 12, 2019) ........................... 15

*B&L Corp. v. Thomas & Thorngren, Inc.*,
162 S.W.2d 189 (Tenn. App. 2004) ....................................................................................... 9, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007) ............................................................................................... 6, 11, 12

*Biogen Idec MA, Inc. v. Japanese Found. for Cancer Rsch.*,
38 F. Supp. 3d 162, 167 (D. Mass. 2014),
*aff'd*, 785 F.3d 648 (Fed. Cir. 2015) ........................................................................................ 22

*Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*,
149 F. Supp. 3d 1167, 1175-76 (N.D. Cal. 2015) ...................................................................... 13

*Brainard v. Vassar*,
561 F. Supp. 922, 936–37 (M.D. Tenn. 2008) .......................................................................... 9, 24

*Data General Corp. v. Grumman Systems Support Corp.*,
36 F.3d 1147, 1164-65 (1st Cir. 1994) ...................................................................................... 25

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848, 864–65 (9th Cir. 2017) ................................................................................. passim

*Fantini v. Salem State Coll.*,
557 F.3d 22, 26 (1st Cir. 2009) ................................................................................................ 12

*Foman v. Davis*,
371 U.S. 178, 182 (1962) .......................................................................................................... 24

*Gavrilles v. O'Connor*,
579 F. Supp. 301, 303 (D. Mass. 1984) ..................................................................................... 11

*Gilbert v. City of Chicopee*,
915 F.3d 74, 80 (1st Cir. 2019) .................................................................................... 12

*Hilsinger Co. v. Kleen Concepts, LLC*,
164 F. Supp. 3d 195, 199 (D. Mass. 2016) ..................................................................... 6

*JT IP Holding v. Thomas Florence, Flopack, LLC*,
No. 20-cv-10433-IT (D. Mass. Sep 01, 2020) ......................................................... 7, 15

*Kadrey v. Meta Platforms*,
23-cv-03417-VC, 788 F.Supp.3d. 1026 (N.D. Cal. Jun 25, 2025) .......................... 6, 14

*Leroux v. Lomas & Nettleton Co.*,
626 F. Supp. 962, 968 (D. Mass. 1986) ........................................................................ 11

*Lexington Ins. Co. v. Johnson Controls Fire Prot. Ltd. P'ship*,
347 F. Supp. 3d 61, 64 n.1 (D. Mass. 2018) ................................................................. 16

*Litchfield v. Spielberg*,
736 F.2d 1352, 1356 (9th Cir. 1984) ............................................................................. 13

*Mdy Indus. Llc v. Blizzard Entm't. Inc.*,
629 F.3d 928, 947 U.S.P.Q.2d 1001 (9th Cir. 2011) .................................................... 19

*Menard v. CSX Transp., Inc.*,
698 F.3d 40, 44-45 (1st Cir. 2012).......................................................................... 15, 16

*Murphy v. Millennium Radio Grp.*,
650 F.3d 295, 300 (3d Cir. 2011)............................................................................ 19, 20

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*,
299 F. App'x 509, 512 (6th Cir. 2008). ........................................................................ 13

*Nikitine v. Wilmington Trust Co.*,
715 F.3d 388, 390 (1st Cir. 2013)................................................................................. 24

*Segrets, Inc. v. Gillman Knitwear Co.*,
207 F.3d 56, 60 (1st Cir. 1999)..................................................................................... 16

*TMTV Corp. v. Mass Prods.*,
345 F. Supp. 2d 196, 211 (D.P.R. 2004), aff'd, 645 F.3d 464 (1st Cir. 2011) ............ 13

*Tremblay v. OpenAI, Inc.*,
716 F. Supp. 3d 772, 778 (N.D.Cal. 2024) .............................................................. 6, 14

*UMG Recordings, Inc. v. Kurbanov*,
2021 WL 6492907, *4 (E.D. Va. Dec. 16, 2021), *report and recommendation adopted*,
No. 1:18-cv-957, Doc. No. 144 (E.D. Va. Feb. 10, 2022)....................................... 8, 19

4

*Universal City Studios Inc. v. Corley*,
273 F.3d 429, 442 (2nd Cir. 2001)........................................................................ passim

*Yankee Candle Co. v. Bridgewater Candle Co.*,
259 F.3d 25, 33 (1st Cir. 2001)........................................................................ 13, 16

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*,
633 F. Supp. 3d 650, 664–65 (D. Conn. 2022)...................................................... 8, 18

**STATUTES**

17 U.S.C. § 1201(a)(1)............................................................................................. passim

17 U.S.C. § 1201(d)-(j) ................................................................................................. 9

17 U.S.C. §§ 106(1)–(2) ............................................................................................... 13

**OTHER AUTHORITIES**

H.R.Rep. No. 105-551, pt. 1, at 17 (1998)............................................................... 19

S. Rep. No. 105-190, at 8, 15 (1998) ....................................................................... 17

**RULES**

Fed. R. Civ. P. 15(a)(2)................................................................................................. 24

Fed. R. Civ. P. 8 ............................................................................................... 6, 12

## I.    INTRODUCTION

This case presents questions of profound consequence for thousands of independent music creators whose songs were scraped and reproduced by Suno without their permission. As one court put it, in an age where access to unlimited creative works "has blurred in some minds the fact that taking what is not yours and not freely offered to you is stealing," the strong right arm of equity remains essential. *Universal City Studios Inc. v. Corley*, 273 F.3d 429, 442 (2nd Cir. 2001). Defendant's motion asks this Court to terminate most of this case at the pleading stage, before Plaintiffs can take discovery or present a record on behalf of absent class members who stand to lose their day in court if dismissal with prejudice is granted. The Court should deny the motion for the following reasons:

*First*, Suno asks this Court to adopt a rule no court has ever recognized - that AI copies of copyrighted music evade liability unless the plaintiff attaches the infringing files at the pleading stage. Suno seeks dismissal of Count 2 of the First Amended Complaint (hereafter "FAC"), which alleges infringement of Plaintiffs'[1] exclusive right to prepare derivative works in their sound recordings and musical compositions (the "songs") because Plaintiffs: 1) have not yet presented infringing Suno outputs at the pleading stage, nor 2) attempted to coax Suno's AI into creating infringing outputs.[2] This argument fails on both law and logic. Suno does not appear to dispute that its AI model *has* repeatedly created infringing outputs so shockingly close to the originals that "you must hear it to believe it" (FAC, ¶ 256), nor does it respond to the approximately 100 examples cited by Plaintiffs demonstrating that Suno's system actively reproduces copyrighted

---

[1] "Plaintiffs" shall be defined herein to mean Plaintiffs and Class Members, as defined in Plaintiffs' FAC. "Subclass Members" shall mean qualified Tennessee unfair competition members.

[2] *See* Doc. 32 (the "Motion"), pp.1, 7, 9-10 ("Plaintiffs have been and remain free to use [Suno's] model] to see what outputs it generates," and have not done so despite "continuous access to Suno for [...] ten weeks..."). Requiring plaintiffs to *coax* evidence of infringement from a closed-source, consumer facing interface, designed and controlled by the Suno is legally unfounded and absurd.

songs as an inherent *feature* of its design. *Id*., ¶¶ 98-9, 257-68, 274-317, 321-34, 358-9, 409-11, 421. The only issue before the Court is whether Plaintiffs plausibly allege that Suno created infringing derivative works based on Plaintiffs' songs. They do.

The Rules require pleading only a "short and plain statement" showing entitlement to relief, not evidentiary proof. Fed. R. Civ. P. 8; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs detail how Suno's AI model was trained on "tens of millions" of copyrighted songs scraped from publicly accessible platforms, including Plaintiffs' songs (FAC ¶¶ 5-11, 52-55, 72-84), and how Suno's models now generate "near-exact replicas" of the songs it trained on, including Plaintiffs' songs (FAC ¶¶ 13, 45-8, 49-50, 52-54, 93-99, 138, 160-63, 257-334, 343-45, 409-11, 419-21, 452–455). Plaintiffs allege not only that Suno's outputs reproduce distinctive melodies, rhythms, and producer tags, but that Suno's creation of derivative works is *ongoing*, with new infringements discovered just prior to Plaintiffs filing their *Id*., *see also* ¶ 285. At this stage, the Court "must assume the truth of all well-pleaded facts and give [Plaintiffs] the benefit of all reasonable inferences therefrom." *Hilsinger Co. v. Kleen Concepts, LLC*, 164 F. Supp. 3d 195, 199 (D. Mass. 2016). Plaintiffs meet that standard. They allege ingestion of their songs without authorization and reproduction in derivative outputs (the foregoing FAC citations collectively hereafter "Output Allegations").

Suno's Motion rests on a misstatement of the pleading standard as well as misinterpretation of early Northern District of California AI decisions. In *Kadrey v. Meta Platforms, Inc*., 23-cv-03417-VC, 5 (N.D. Cal. Jun 25, 2025); *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 858 (N.D. Cal. 2023); and *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 774 (N.D. Cal. 2023), each case rested on a categorical "all outputs are infringing" theory and failed to present concrete allegations of copying or substantial similarity after an opportunity to conduct discovery. Here, Plaintiffs do not allege all Suno outputs are derivatives of Plaintiffs' songs. Moreover, Suno's platform is closed

and proprietary - placing the evidence "peculiarly within the possession and control of the defendant." *JT IP Holding, LLC v. Florence*, No. 19-cv-11869-ADB, 2020 WL 5217118, at 7 (D. Mass. Sept. 1, 2020). Suno's "show me the outputs" argument is not the law. The Federal Rules require plausibility, not pretrial proof. Suno's request to dismiss Count 2 should be denied.

*Second*, Suno's motion to dismiss Plaintiffs' Count 3 for violation of the Digital Millenium Copyright Act ("DMCA") under 17 U.S.C. § 1201(a)(1) fails from the outset. It substantively only addresses Plaintiffs' YouTube-based allegations, while ignoring other detailed claims of circumvention across multiple platforms. *See* FAC ¶¶ 11–12, 39, 72–83, 360–83, 463–75.[3] Plaintiffs allege Suno bypassed numerous access technological protection measures ("TPMs") - including YouTube's rolling cipher - to obtain unauthorized access to Plaintiffs' underlying song and video files. *Id.* By ignoring the other Protected Platforms, Suno fails to address entire categories of alleged circumvention, rendering its motion incomplete and legally unsustainable.

Even as to YouTube, Suno does not dispute that the rolling cipher is a "technological measure" or that it is "effective." Instead, it argues that because YouTube permits public streaming (without additional password protection), the inability to fully prevent access transforms an "access control" into merely a "copy control" (Mot. at 12–15). This argument distorts § 1201(a)(1), which expressly prohibits circumvention of *any* TPM that controls access to the underlying copyrighted work (i.e., the files themselves) - even if those measures do not fully block access (such as the ability to still view through an authorized player). *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 864–65 (9th Cir. 2017); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 444 (2d Cir. 2001). A TPM that limits *if*, *how* or *under what circumstances* someone may access

---

[3] Plaintiffs allege mass scraping by Suno on platforms such as *Spotify*, *Jamendo*, *Free Music Archive*, and *MusicBrainz*, as well as on Plaintiffs' own websites (hereafter the "Protected Platforms"), which, in certain instances, may require bypassing a paywall. *Id.*, ¶ 73-81. Whether Suno lawfully bypassed these paywalls is an unknown factual question for discovery.

content clearly controls access. *VidAngel, Inc.*, 869 F.3d at 864-65; *Universal City Studios, Inc.*, 273 F.3d at 444. The DMCA sought to *expand* protection of copyrighted works in the digital age, not lessen them. *See* S. Rep. No. 105-190, at 8–9 (1998); *See also VidAngel*, Inc., 869 F.3d at 865 (Congress likely anticipated that a TPM "would be an access control measure despite involving 'a merger of access controls and copy controls'"). Courts have already rejected Suno's argument that publicly accessible platforms like YouTube warrant "less protection" under § 1201. *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650, 664–65 (D. Conn. 2022) (holding that YouTube's rolling cipher qualifies as an access control under § 1201(a)(1)); *UMG Recordings, Inc. v. Kurbanov*, 2021 WL 6492907, at *6–7 (E.D. Va. Dec. 16, 2021), *report and recommendation adopted*, 2022 WL 20417526 (E.D. Va. Feb. 10, 2022) (same). Indeed, "controlling access" is exactly what YouTube's rolling cipher does. FAC, ¶ 464. Suno's claim that only paywalls and passwords qualify as "real" access controls would eviscerate § 1201(a) and render streaming platforms like YouTube open season for infringers - punishing creators and inviting mass piracy.

Next, Suno argues that recognizing YouTube's rolling cipher as an access control would harm "fair users" and prevent fair use of YouTube videos. Mot., at 13. However, Suno ignores how 17 U.S.C. § 1201(a) and 17 U.S.C. § 106 *already* operate in harmony on YouTube. Circumvention is not needed on YouTube to obtain exact copies of videos for fair use purposes. While platforms like Hulu and Netflix institute encryption to prevent users from screen recording videos to make copies (even after gaining access via a paid subscription), as discussed further herein, YouTube permits copying through screen-recording tools like OBS[4], while concurrently employing a rolling cipher encryption to safeguard the underlying video and audio files. What

---

[4] Open Broadcast Software ("OBS") is a free, open-source software for online video screen recording, https://obsproject.com/.

Suno means to say is that breaking through TPMs to download millions of songs from "publicly accessible" platforms (FAC, ¶¶ 72, 139) should be excused by fair use when it is *more convenient* for Suno to do so. "Fair use has never been held to be a guarantee of access to copyrighted material in order to copy it by the fair user's preferred technique…" *Universal City Studios, Inc.,* 273 F.3d at 459. Moreover, "[i]t would be strange for Congress to open small, carefully limited windows for circumvention to permit fair use," only to suggest elsewhere that *any* circumvention can be treated as a necessary evil in service of fair use. *Universal City Studios, Inc.*, 273 F.3d at 459; *see* 17 U.S.C. § 1201(d)-(j).

The question to Suno is: when did surgically extracting audio from a secure video environment become "copying" under the law? Plaintiffs plausibly allege that Suno circumvented access controls under § 1201(a)(1). Dismissal is inappropriate at this stage.

*Third*, Plaintiffs' Count 4, although inadvertently titled "Tennessee Consumer Protection Act" ("TCPA"), Plaintiffs' provide factual allegations under Tennessee common-law unfair competition, a long-recognized tort that protects against the misappropriation of another's labor and goodwill for commercial gain. *See B&L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.2d 189, 215-216 (Tenn. App. 2004); *Brainard v. Vassar*, 561 F. Supp. 922, 936–37 (M.D. Tenn. 2008). Suno's conduct of repurposing Plaintiffs' labor and identities to build and license its AI services constitutes competitive misappropriation, not mere copying. Plaintiffs request amendment to correct the Count 4 citation, which otherwise relies on the same facts already plead, and ensures that the absent class members' valid state-law rights are preserved.

## II.    FACTUAL BACKGROUND

Plaintiffs are independent music creators and their respective recording companies. FAC, ¶¶ 56-67. Defendant Suno, Inc. ("Suno") operates an AI music generation service that generates AI songs through text prompts (the "Suno Website"). FAC ¶¶ 68-70. Suno has openly and

unapologetically admitted to scraping and duplicating tens of millions of "publicly available" songs, which songs are majority owned and controlled by Plaintiffs. FAC ¶ 5. Without unlawfully copying, Suno could not produce the product offered on the Suno Website to its 12,000,000 users. *Id.* ¶ 83. However, Suno's misconduct extended beyond copyright infringement. Suno unlawfully and repeatedly produced outputs containing verbatim or near-verbatim excerpts of pre-existing song, including Plaintiffs', melodies, lyrics and instrumentals, including outputs that duplicate audible brand identifiers (e.g., producer tags) representing their creators. *See* Output Allegations. Importantly, Plaintiffs do not assert that *every* output generated by Suno's AI model(s) is an infringing work of their songs, and instead assert *certain* output were infringing derivative works. *Id.*, ¶ 95-8. Independent third parties have documented and demonstrated that these unauthorized derivative works created by Suno were not isolated accidents, but a purposeful occurrence of Suno's actual design. *See* Output Allegations. Suno deliberately sought to blur the line between the songs on which it trained and its AI-generated outputs, by ensuring that the model's generated commercially appealing "hit songs." *Id.*, ¶¶ 329-34.

Suno's Co-founder and CEO Mikey Shulman admitted that Suno's model already can produce outputs that replicate real artists' songs and voices – so much so that the company is "holding back" on letting users generate exact replicas until "the licensing climate is a little less uncertain." *Id.* ¶ 326. In recent months, Suno's own executive leadership in charge of product development was publicly exposed using Suno to create unauthorized derivative works of songs belonging to independent music creators. *Id.*, ¶¶ 335-40. These actions reflect a normalized practice within Suno of using Plaintiffs' songs to generate unauthorized derivative work without license or authorization. *Id.* ¶¶ 342-45. But Suno's misconduct extends beyond copyright infringement. Suno unlawfully accessed Plaintiffs' songs by circumventing the protections that YouTube and other Protected Platforms enable to control how copyrighted works may be accessed,

viewed, and copied. *Id*., ¶¶ 73-80, 360-77.

Users can *stream* videos through YouTube's web player (similar to how a user can view a video from a DVD player). *Id*., ¶ 362. While YouTube and other Protected Platforms *may* provide for a limited download feature for offline viewing, such as within the YouTube application, YouTube and other Protected Platforms expressly prohibit users from accessing the underlying audiovisual file or song file. *Id*., ¶¶ 144-5, 368, 375. To enforce this restriction, YouTube deploys an anti-circumvention procedure called a "rolling cipher," which provides a technical protection for the underlying files(s) contained in the YouTube videos. *Id*., ¶ 370-74. The very purpose of the rolling cipher is to stop a YouTube user from gaining access to those files in a permanent and unrestricted way. *Id*., ¶ 374. Despite the TPMs employed by YouTube and other Protected Platforms, Suno engaged in stream-ripping to overcome encryption systems controlling access to Plaintiffs' songs, which otherwise could have been lawfully acquired. *Id.*, ¶¶ 364-77.

Finally, Suno commercially misappropriated the creative labor and goodwill of Subclass Members by bypassing existing opt-in licensing systems, using their songs, voices, and identifiers to train, market, and unfairly compete with Suno's AI platform without consent or compensation. See FAC ¶¶ 5–13, 34–36, 50–55, 64, 86, 94, 116–124, 148, 357–58.

## III.   LEGAL STANDARD

A complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 570. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662, 678. A court should not allow a motion to dismiss unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief.' *Leroux v. Lomas & Nettleton Co*., 626 F. Supp. 962, 968 (D. Mass. 1986) **(**quoting *Gavrilles v. O'Connor*, 579 F. Supp. 301, 303 (D. Mass. 1984)**).** The Court "must

accept all well-pleaded facts as true, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff." *Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019).

## IV.    ARGUMENT

### A.  PLAINTIFFS ALLEGE OUTPUT INFRINGEMENT

#### i.    Suno Misstates the Pleading Standard for Copyright Infringement

Suno's argument for dismissal of Plaintiffs' copyright infringement claim is simple: produce the infirming outputs now, or face dismissal. Mot. 7-10. However, Plaintiffs are only required to provide a "short and plain statement of the claim showing that the pleader is entitled to relief," not detailed evidentiary proof. Fed. R. Civ. P. 8; *Iqbal*, 556 U.S., 678; *Twombly*, 550 U.S., 555. At this stage, the Court "must accept as true all well-pleaded facts[,] indulging all reasonable inferences in [the plaintiff's] favor." *Fantini v. Salem State Coll.*, 557 F.3d 22, 26 (1st Cir. 2009) (citation omitted). As shown below, Suno's argument fails for several reasons:

*First*, Suno does not dispute it scraped millions of songs from "publicly accessible" platforms - including YouTube - to train its AI model. Suno also does not dispute that its AI model generated outputs reproducing Plaintiffs' songs and other copyrighted works, with new instances occurring even months before Plaintiffs filed the FAC. FAC, ¶ 285. Plaintiffs meet the pleading threshold by alleging, plausibly and in significant detail, approximately 100 examples of infringing Suno outputs containing copyrighted songs, demonstrating that such reproductions are ongoing and inherent to Suno's design. *See* Output Allegations. Plaintiffs further allege that Suno generated "near-exact replicas" of copyrighted songs, including Plaintiffs' songs, reproducing distinctive melodies, rhythms, and producer tags. *Id*. These well-pleaded facts show Suno's infringing outputs are not hypothetical but concrete, good-faith allegations that Suno created unauthorized derivative works from Plaintiffs' songs. *Id*. ¶¶ 285, 358–59, 383. The admission of Suno's own CEO that

Suno's model *is already capable* of generating exact replicas of artists' songs and voices makes Plaintiffs' allegations that much more credible. FAC, ¶ 326.

*Next*, Suno relies heavily on cases involving plaintiffs who failed to allege *any* factual connection between their copyrighted works and the accused material. In *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*, the court dismissed the plaintiff's claim for its failure to allege any act of copying or identify a single infringing work. *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008). Here, Plaintiffs describe in detail Suno's large-scale scraping, ingestion and reproduction of "near exact replicas" AI songs that mirror the songs in Suno's dataset, which include Plaintiffs' songs. *See* Output Allegations. In *Blizzard Ent., Inc. v. Lilith Games (Shanghai) Co.*, the court dismissed because the plaintiffs only alleged their game was copied, and did not identify representative infringing material. 149 F. Supp. 3d 1167, 1175-76 (N.D. Cal. 2015). By contrast, Plaintiffs allege concrete instances of derivative outputs replicating melodies, tags, and vocals corroborated by third-party analyses. *See* Output Allegations.

Courts routinely deny dismissal where discovery is required to compare the works and assess copying. For example, in *TMTV Corp.*, the court recognized [w]hen determining similarity, courts are to look at the 'total concept and feel' of the [compared works] designs," underscoring that disputes over substantial similarity are factual - not pleading - issues. *TMTV Corp. v. Mass Prods.*, 345 F. Supp. 2d 196, 211 (D.P.R. 2004), aff'd, 645 F.3d 464 (1st Cir. 2011); *see also Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 33 (1st Cir. 2001) (holding similarity assessments depend on record evidence, not pleading allegations); *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) (making comparison in works only after full discovery). Plaintiffs have plausibly alleged unauthorized derivative reproduction under 17 U.S.C. §§ 106(1)–(2) and are entitled to discovery. Suno's Motion should therefore be denied.

ii.     **Suno Incorrectly Interprets North District of California Decisions**

Suno relies heavily on *Kadrey*, *Andersen*, and *Tremblay*, which are early Northern District of California AI decisions Plaintiffs can easily distinguish from the present case.

In *Kadrey*, the court granted a summary judgment on the issue of fair use because after full discovery, the plaintiffs could not show any outputs substantially similar to their works or evidence of market harm. *See Kadrey*, 23-cv-03417-VC, at 40. "[C]ourts … must decide based on the arguments presented and the *evidence submitted* by the parties." *Id*. at 32.[5] There, the court conducted an actual comparison between the AI outputs and the original works, which were available after the parties' conducted discovery. *Id.* at 4-5. The *Kadrey* court reluctantly granted summary judgment based on a lack of substantial similarity, but stated "in the grand scheme of things, the consequences of this ruling are limited. This is **not** a class action, so the ruling only affects the rights of these thirteen authors-not the countless others whose works [defendant] used to train its models on." *Id*. (emphasis added). Plaintiffs' case **is** a class action that seeks the rights of a nationwide class of independent music creators – precisely the "countless others" the *Kadrey* court recognized as similarly harmed and left without any remedy. Plaintiffs not only allege substantial market harm but also have had no opportunity to conduct discovery and obtain the evidence Suno exclusively controls. FAC ¶ 400.

*Tremblay* and *Anderson* are also distinguishable; each case rested on a categorical "all outputs are infringing" theory and failed to present concrete allegations of copying or substantial similarity *after* an opportunity to conduct discovery. *Tremblay,* 716 F. Supp. 3d, 778; *Andersen*, 700 F. Supp. 3d at 866-68. Here, Plaintiffs do not allege that *every* output generated by Suno's AI

---

[5] The *Kadrey* court remarked: "companies have been unable to resist the temptation to feed copyright-protected materials into their models without getting permission from the copyright holders or paying them for the right to use their works for this purpose. This case presents the question whether such conduct is illegal… in most cases the answer will likely be yes." *Id* at 1.

model(s) is an infringing output of Plaintiffs' songs. FAC, ¶¶ 95-8. Plaintiffs allege Suno created *certain* infringing derivative work AI outputs. *Id*. Plaintiffs cannot access Suno's closed black box system but nonetheless have concrete and plausible allegations of unlawful copying and reproductions of Plaintiffs' songs that has already occurred based on Suno's own design and admissions to date. *Id*.[6] Plaintiffs have sufficiently pled their Output Allegations.

### iii.    Pleading On "Information and Belief" is Common and Appropriate Here

Suno next attacks Plaintiffs' use of "information and belief," asserting Plaintiffs only make general and conclusory statements related to evidence of infringing outputs. Mot., pp.9-10. However, "[p]leading 'upon information and belief' is not fatal under *Twombly*." *JT IP Holding v. Thomas Florence, Flopack, LLC*, No. 20-cv-10433-IT (D. Mass. Sep 01, 2020) (citing *Aspen Tech., Inc. v. Walter*, No. 19-cv-11292-GAO, 2019 WL 4795551, at *4 (D. Mass. Sept. 12, 2019). The relevant evidence – Suno's training data and output files - is "peculiarly within the possession and control of the defendant." *JT IP Holding*, 2020 WL 5217118, at *7. Thus, Plaintiffs' pleading based on information and belief is not "pure speculation" but a necessary and accepted mechanism where critical facts lie behind a locked door to which defendant alone has access. *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (allegations based on information and belief sufficient where information is within defendant's control).

Plaintiffs' assertions on information and belief are neither speculative nor conclusory. The factual allegations rooted in "information and belief" describe *how* the copying occurred, *what* was copied, and *why* discovery is needed to identify the full scope of infringing outputs. Plaintiffs' allegations made upon "information and belief" survive analysis under *Twombly* where Plaintiffs

---

[6] Suno's model cannot be "tested" in the way Suno seems to suggest that Plaintiffs could have done since the outset of this litigation. Mot. 1,10. Users cannot prompt Suno to "generate" or reveal specific copyrighted songs, nor query its training data to identify what recordings were used. The Suno interface provides only limited parameters (e.g., style, genre, tempo) and returns audio clips without disclosing any underlying data or model logic.

allege: (1) the facts are within the possession and control of Suno, or (2) the belief is based on factual information that makes the inference of culpability plausible. *See Lexington Ins. Co. v. Johnson Controls Fire Prot. Ltd. P'ship*, 347 F. Supp. 3d 61, 64 n.1 (D. Mass. 2018) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) and *Menard*, 698 F.3d, 44-45 (1st Cir. 2012)). Both are applicable here. In short, the cases cited by Suno stand for the unremarkable proposition that plaintiffs who neither allege copying nor identify expressive overlap after discovery cannot proceed. *Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 60 (1st Cir. 1999) ("plaintiff must prove that the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works 'substantially similar'"). The FAC alleges a concrete chain of documented unlawful reproduction with exact or almost exact Suno outputs. At the pleading stage, courts in this Circuit have repeatedly held that substantial-similarity questions require a detailed factual record and cannot be resolved at the pleadings stage. *Yankee Candle Co.*, 259 F.3d 25, 33 (1st Cir. 2001). Suno's argument therefore fail and its motion to dismiss should be denied.

### B. SUNO CIRCUMVENTS ACCESS CONTROLS ON YOUTUBE AND OTHER PLATFORMS

### i. Plaintiffs Allege Violation of § 1201(a) Through Suno's Circumvention of Access Controls on YouTube and Other Platforms

Suno next argues YouTube's content is freely streamable – meaning "accessible" to the public, so no "access control" therefore exists under § 1201(a)(1)(A) because only paywalls or passwords qualify as "real" access controls. *See* Mot. at 11-15. Suno's contention misstates both the statute and relevant case law. Section 1201(a) does not require a technological measure to absolutely bar access to a work to trigger DMCA protection. Access is more nuanced than this such a "full-grant" or "full-block" framework. A TPM "controls access" when it sets *any* barrier or condition on reaching the copyrighted content. *See, e.g.*, *VidAngel, Inc.* 869 F.3d at 864-65; *Universal City Studios, Inc.*, 273 F.3d at 441-44. This reading flows directly from Congress's design. While Suno alleges Congress intentionally drew a distinction between access controls and

copy controls in § 1201 to preserve the balance between copyright protection and lawful uses (Mot., pp. 11-13), Congress intentionally chose the word *control* and not *prevent* so rightsholders could embrace online distribution while still retaining meaningful restrictions on how their works are accessed.[7] *See also* S. Rep. No. 105-190, at 8, 15 (1998) (Congress enacted the DMCA to "create[ ] the legal platform for launching the global digital on-line marketplace for copyrighted works", including later-developed online platforms, envisioning "the rapid and dynamic development of better technologies"). *Id*. The DMCA was designed to enable lawful and controlled online consumption, not to make works free for the taking. Suno's admission that its "training data includes essentially all music files… on the open Internet," while "abiding by paywalls, password protections," does not shield Suno from liability, even if true. FAC, ¶¶ 140-143.

Accessing a platform pursuant to consumer-facing terms of service does not confer a license to break additional encryption measures designed to prevent piracy, which is exactly what YouTube's access controls aim to do. *Id.*, ¶¶ 144–45. When copyright owners authorize streaming, they grant only the limited right of public performance under 17 U.S.C. § 106(4) - not permission to access, download, or reproduce their underlying audio files. *See* 17 U.S.C. § 1201(a)(3)(A) (defining "circumvent" as bypassing a TPM "without the authority of the copyright owner"); *VidAngel*, 869 F.3d at 863 (same). Courts interpreting § 1201(a) have repeatedly recognized that TPMs may "control access" even when they allow *some* lawful access under limited conditions. A well-established line of cases addressing DVD encryption confirms this principle: defeating the encryption protecting DVDs violates § 1201(a) despite the fact that purchasers may lawfully view

---

[7] In the 1990s, a growing number of tools facilitated "massive piracy" by increasing "the ease with which digital works [could] be copied and distributed worldwide virtually instantaneously." S. Rep. No. 105-190, at 8 (1996). Congress feared that "copyright owners [would] hesitate to make their works readily available on the Internet without reasonable assurances that they [would] be protected." *Id*. In order to provide protection in the digital age, Congress enacted the DMCA, which "backed… the efforts of copyright owners to protect their works from piracy." *Green v. United States Department of Justice*, 54 F.4th 738, 741 (D.C. Cir. 2022).

DVDs using licensed players. *See, e.g.*, *VidAngel*, Inc., 869 F.3d at 863–65; *Universal City Studios, Inc.*, 273 F.3d at 441-44*; 321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1096 (N.D. Cal. 2004). As these courts explained, the DVD Content Scramble System is an access control because it allows users to view protected works only through authorized devices, while preventing users from obtaining unrestricted access to the underlying files. *See VidAngel, Inc.,* 869 F.3d at 864–65 (explaining that "only authorized [DVD] players get those keys" that unlock the DVD's content).

　　The same fact pattern exists here. YouTube restrains access to the underlying video files and song files but permits users to stream videos lawfully through YouTube's authorized interface – the equivalent of a DVD player – by way of YouTube's rolling cipher. FAC, ¶ 370. Courts addressing YouTube's rolling cipher have already rejected Suno's arguments. In *Yout*, the court held that YouTube's TPM "controls access" to copyrighted files because it restrains a user's ability to reach the location where downloadable audio files are stored and download them, even though streaming is permitted. *Yout,* 633 F. Supp. 3d at 664–65 ("the plain meaning of the phrase 'controls access' may include technical protective measures that restrain a YouTube user's freedom or ability to access the location where downloadable files are stored and download them"). *Id.* at 664. The Court applying the plain Merriam Webster definitions of *control* as "to exercise restraining or directing influence over" and *access* as "freedom or ability to obtain or make use of something. *Id*. The *Yout* court expressly *rejected* the claim that a rolling cipher cannot qualify as an access control simply because "some" access through public streaming is allowed. *Id*. at 662-68. While YouTube videos contain a "play" button, they do not readily offer a "download" button for users to access the internal audio or video file. *Id*. at 666.  Likewise, the *Kurbanov* court determined that bypassing the same youtube-dl application violated § 1201(a)(1) because it "does not allow users to download the videos or audio files streamed on the watch pages." *Kurbanov*, 2021 WL 6492907,

*4 (E.D. Va. Dec. 16, 2021). These decisions directly undermine Suno's position.

Plaintiffs have adequately alleged that Suno unlawfully bypassed technological protection measures on YouTube *and other* Protected Platforms, such as Spotify and Plaintiffs' own websites, to gain unauthorized access to their Plaintiffs' songs. FAC ¶¶ 11-2, 39, 72-83, 360–83, 463-75. YouTube specifically employs a rolling-cipher encryption system that controls access where the audio files are stored, preventing users from extracting internal video or song files. *Id*. Suno engaged in "stream ripping," a form of piracy that circumvents encryption, authentication, and other digital rights-management technologies, by using tools such as YT-DL and YT-DLP to defeat YouTube's encryption and obtain unrestricted, permanent "copies" of the underlying audio files embedded in videos - all without Plaintiffs' authorization.[8]

Suno's conduct constitutes the "electronic equivalent of breaking into a locked room" to seize the book inside. *Mdy Indus. Llc v. Blizzard Entm't. Inc.*, 629 F.3d 928, 947 U.S.P.Q.2d 1001 (9th Cir. 2011) (*citing* H.R.Rep. No. 105-551, pt. 1, at 17 (1998)); *see also Murphy v. Millennium Radio Grp*., 650 F.3d 295, 300 (3d Cir. 2011) (explaining that where a studio encrypts a DVD so it "cannot be copied without special software or hardware," and a user using his own software then "crack[s]" that encryption to make unauthorized copies, the DMCA permits circumvention liability for defeating a 'technological measure' designed to 'control … access to' the DVD.") Indeed, Suno's actions fall squarely within the conduct prohibited by § 1201(a)(1)(A).

Additionally, Plaintiffs' §1201(a) claim does not rest solely on YouTube, as Suno incorrectly suggests. Plaintiffs allege circumvention of TPMs across multiple platforms, which Suno does not substantively address. Suno's motion therefore fails for these reasons alone.

---

[8] Suno argues that since Suno downloaded "copies" of the video files, YouTube's encryption should be viewed as a mere "copy control." Mot. at 15. However, Suno had to illicitly defeat access restrictions to surgically extract Plaintiffs' audio files from their protected video environments. The fact that Suno engaged in this invasive process underscores that the encryption was operating as an access control, and that Suno broke it.

20

ii.    Suno's "Purpose" for Circumvention is Irrelevant Under § 1201(a)(1)

Suno next argues that even if it *did* circumvent YouTube's technological protection measures, breaking TPMs is excused under § 1201(a) if the end purpose is fair use.

*First*, Suno's argument fails because § 1201(a)(1) prohibits the act of circumvention itself, regardless of what the user intends to do *after* obtaining unauthorized access. The statutory text contains no purpose-based limitation. The DMCA's anticircumvention provisions, §§ 1201(a)-(b), create independent causes of action for liability and expressly distinguish circumvention from copyright infringement: "Nothing in this section shall affect rights, remedies, limitations, or defenses to copyright infringement, including fair use, under this title." 17 U.S.C. § 1201(c)(1). While a user may invoke fair use as a defense to copyright infringement, that defense does not excuse unlawful circumvention under § 1201. *Chamberlain Group v. Skylink Tech., Inc.*, 381 F.3d 1178, 1194 (Fed. Cir. 2004). Courts have therefore repeatedly rejected arguments that circumvention escapes § 1201(a)(1) liability merely because the defendant sought to make a copy. In *VidAngel*, for example, the defendant argued it did not violate the DMCA because its decryption of DVDs was done only to copy, and not to "view" the movies. *VidAngel, Inc.*, 869 F.3d at 864. *VidAngel* claimed that because it only intended to copy the DVDs, it had therefore only bypassed a "use control" (the equivalent of a copy control here) and therefore could not have violated § 1201(a)(1). *Id.* The Court squarely rejected that reasoning, holding that a TPM may function as *both* an access control and a copy control, and that liability attaches to the act of bypassing the access restrictions regardless of subsequent copying. *Id.* A defendant who "decrypts the TPMs and then also reproduces that work [ ] is liable for both circumvention in violation of § 1201(a)(1)(A) and copyright infringement in violation of § 106(1)." *Id.*; *see also Murphy*, 650 F.3d at 300. The same result follows here. Although Suno fails to substantively address any other Protected Platform alleged in Plaintiff's FAC and focuses solely on YouTube, YouTube's rolling cipher and

related TPMs restrict how users may access copyrighted content, similar to DVD encryption.

*Next*, Suno incorrectly argues that treating YouTube's rolling cipher as an access control prevents fair use and penalizes "fair users." Mot., at 13. However, Suno's fair-use-based theory ignores the current harmony of § 1201(a) and § 106, particularly on YouTube. For example, a common way to make fair use of YouTube videos is through screen-recording tools, such as OBS - which creates exact copies of publicly displayed videos without ever accessing the underlying files.[9] Unlike subscription platforms like Hulu or Netflix, which employ DRM encoding to block user copying, even after gaining lawful access via a paid subscription,[10] YouTube instead permits users to screen-record to create exact copies without breaching its encryption or server-level protections. YouTube enables the fair use of videos while expressly prohibiting accessing their underlying song and video files. FAC, ¶ 144. Rather than "just copy", Suno had to defeat YouTube and other Protected Platform's "Secret Handshake."[11]

Suno's demand for a "fair use purpose" analysis is nothing more than an attempt to legitimize its preferred method of mass-scraping Plaintiffs' songs, despite violating § 1201(a). *Universal City Studios, Inc.*, 273 F.3d at 459 ("[f]air use has never been … a guarantee of access to copyrighted material in order to copy it by the fair user's preferred technique…"). Importantly, Suno fails to cite to any case holding that a TPM controlling access loses that status when

---

[9] *How to Use OBS Screen Capture*, Restream, available at https://restream.io/learn/obs-studio/how-to-use-obs-screen-capture/ (last accessed November 7, 2025).

[10] Digital Rights Management ("**DRM**") encryption prevents not only the downloading of underlying files, but also the capturing of the video stream itself - resulting in a blank or black screen if a user attempts to screen record playback; *see How to Record Netflix with OBS |A Step-by-step Guide*, available at https://democreator.wondershare.com/screen-recorder/how-to-record-netflix-with-obs.html (last accessed November 7, 2025) (… "Netflix uses a special DRM protection technology to prevent its streaming from copyright infringement").

[11] *RealNetworks, Inc. v. Streambox, Inc.*, No. 2:99-cv-02070, 2000 WL 127311, at *7 (W.D. Wash. Jan. 18, 2000) (discussing how DRM encryption that both protects access to a work by requiring a "Secret Handshake" to view it, and separately protects against unauthorized copying of a work by using a "Copy Switch" to prevent a user from recording a copy as the file is streamed violated § 1201).

circumvention facilitates copying. Instead, Suno contends that Congress declined to prohibit circumvention of "copy controls" to preserve fair-use copying. Mot, at 3, 19. However banning *access control* circumvention was the only thing necessary, because copyright infringement remedies already existed. As the Senate Report explains, § 1201(a)(1) was enacted because "prior to this Act, the conduct of circumvention was never before made unlawful," whereas "copyright law has long forbidden copyright infringements, so no new prohibition [on circumventing copy controls] was necessary." S. Rep. No. 105-190, at 12. Because neither the statute nor the case law supports its position, Suno relies almost entirely on cherry-picked legislative history to invent a bright-line separation between access controls and copy controls. However, legislative history "cannot override the plain language of a statute." *See Biogen Idec MA, Inc. v. Japanese Found. for Cancer Rsch.*, 38 F. Supp. 3d 162, 167 (D. Mass. 2014) (Saylor, J.) (citation omitted), *aff'd*, 785 F.3d 648 (Fed. Cir. 2015). Here, Suno seeks to invert the DMCA independent liability structure by elevating its asserted fair-use rationale into a blanket authorization to bypass encryption whenever doing so would speed up its business practices. That is not the law. Fair use is a defense to copyright infringement. It is not a license to pry open digital locks in the name of convenience.

Congress struck the balance Suno claims to defend: fair use remains available for those who lawfully obtain access; § 1201(a)(1) bars only those who break through access controls to take what they were never permitted to reach.[12] If Suno truly believed its copying was defensible, it could have lawfully acquired Plaintiffs' songs through purchase, license, or other authorized means. What § 1201(a)(1) forbids is not the copying - it is the lock-picking itself. Suno's mass scraping does not qualify for fair use, but even if it did, allowing fair use to excuse violation of § 1201 would gut the DMCA's core protection and reward the very circumvention Congress sought

---

[12] The DMCA already contains multiple safeguards to ensure that lawful users retain the ability to make non-infringing uses of lawfully accessed works, including through the triennial rulemaking process and express statutory exemptions. See 17 U.S.C. § 1201(a)(1)(B)–(D), (d)–(j).

to deter. At this stage, Suno cannot resolve the highly factual questions its theory depends on - how each TPM on YouTube and other Protected Platforms operates, and how they were bypassed. As the District of Massachusetts has recognized, "[i]n reviewing for futility, the district court . . . must assume the truth of all well-pleaded facts and give plaintiff the benefit of all reasonable inferences therefrom." *Hilsinger Co. v. Kleen Concepts, LLC*, 164 F. Supp. 3d 195, 199 (D. Mass. 2016). Dismissal at this stage is improper.

### C. TENNESSEE UNFAIR COMPETITION

### i.    Amendment Is Proper Under Fed. R. Civ. P. 15(a)(2)

Suno argues that Count 4 fails because it invokes the TCPA (Tennessee Consumer Protection Act), which does not permit class actions under Tennessee law. The citation to TCPA (FAC, p.6) was <u>inadvertent</u>. Count 4 is Plaintiffs' common-law unfair competition claim, which is evident from the continuous allegations made throughout Plaintiffs' 68-page FAC. *See, e.g.,* FAC ¶¶ 5–13, 34–36, 50–55, 64, 86, 94, 116–124, 148, 357–58. Plaintiffs allege Suno built its model by exploiting the labor of Subclass Members by bypassing existing, voluntary opt-in licensing systems already used by other AI competitors, such as ElevenLabs. *Id*. This existing market for AI licensing demonstrates that Suno could have trained its models while fully compensating creators. *Id*. Instead, Suno deliberately took the fruits of those creators' efforts - songs, producer tags, and brand identifiers that serve as personal signatures within the music industry - and replicated them in Suno's AI model(s) and services that mislead the public as to origin, authorship, and sponsorship. *Id*. Suno benefited from the misappropriation of Subclass Members' labor as independent music creators. *Id*.[13]

---

[13] Suno's bad-faith intent is further confirmed by its investors' admissions that Suno was built "without the constraints" of obtaining licenses or permissions. FAC ¶¶ 131–34. In other words, Suno's business strategy depended on avoiding the costs of lawful licensing - an advantage obtained only through misappropriating the efforts of Plaintiffs. *Id*. Suno never even attempted to get permission or give credit to Subclass Members. *Id*.

Tennessee has long recognized that unfair competition encompasses any recognized wrong that improperly interferes with another's business prospects. *See B&L Corp,* 162 SW2d at 215 (Tenn. Ct. App. 2004). This distinct tort extends to the theft of creative content. *Brainard*, 561 F. Supp. 2d, 936–37 (M.D. Tenn. 2008). A plaintiff must prove that: (1) the defendant engaged in conduct which "passed off" its organization or services as that of the plaintiff; (2) in engaging in such conduct, the defendant acted with an intent to deceive the public as to the source of services offered or authority of its organization; and (3) the public was actually confused or deceived as to the source of the services offered or authority of its organization. *Brainard* at 937. Creating a song is the services of a songwriter. Taking the song of another and labeling it as his or her own can be said to have exhibited "conduct which 'passed off' it's...services as that of the plaintiff." By repurposing Plaintiffs' creative works to build and market its own AI services, Suno passed off the fruits of Subclass Members' labor as its own, gaining a commercial advantage through competitive misappropriation. Tennessee law recognizes such exploitation of another's creative effort as unfair competition. *Id.* at 936–37.

Fed. R. Civ. P. 15(a)(2) directs that "[t]he court should freely give leave when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave should be denied only upon a showing of undue delay, bad faith, futility, or prejudice. *Nikitine v. Wilmington Trust Co.*, 715 F.3d 388, 390 (1st Cir. 2013). None of those factors apply here. The amendment merely clarifies the intended legal theory; it does not alter the operative facts or the scope of discovery. Defendant has been on notice from the outset that Plaintiffs challenge Suno's use of their creative output – songs, voices, and signatures – to train and market an AI-based music platform that competes with them directly. Because the amendment causes no prejudice or delay, leave should be granted.

### ii.    Tennessee Unfair Competition is Not Preempted by Copyright Law

Subclass Members - many of whom lack copyright registrations and therefore are not

asserting copyright infringement (FAC, ¶ 64, 66-7) - nonetheless lawfully market and license their songs in the open marketplace. FAC, ¶¶ 64, 116, 118-24. Suno's conduct deprived them of attribution, credit, and compensation while reaping the commercial benefits of their labor. FAC, ¶¶ 86, 94, 148. This constitutes unfair competition and competitive misappropriation, not copyright infringement: the injury lies in the unfair market advantage Suno obtained by using Plaintiffs' creative identity and output to compete against them.

The First Circuit consistently holds that a state-law claim survives preemption where it includes an *extra element* such as commercial misconduct, misappropriation, or breach of duty beyond the mere act of copying. *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1164-65 (1st Cir. 1994) (§ 301 does not preempt state-law claims requiring proof of "breach of a duty of trust or confidentiality" or "unfair competition," because those claims contain an extra element beyond reproduction or distribution). Because Plaintiffs' claim centers on Suno's unfair market advantage related to its competing AI platform, which was built using Plaintiffs' artistic labor, rather than on infringement of copyrighted works, the common-law tort is not preempted and states a viable independent cause of action.

To the extent the Court concludes that any of Plaintiffs' factual allegations require further detail, Plaintiffs respectfully request leave to supplement those allegations and cure any perceived deficiencies. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires").

## V.    CONCLUSION

For the foregoing reasons, dismissal is improper at this stage for Plaintiff's Copyright Infringement and DMCA claims and the Unfair Competition claim is appropriate. Plaintiffs respectfully request that the Court deny Suno's Motion to Dismiss in its entirety or, alternatively, grant Plaintiffs leave to amend to address any deficiencies.

Dated: November 10, 2025

/s/ Krystle Delgado
Krystle Delgado, AZ Bar No. 031219
*Pro Hac Vice Admission*
**Delgado Entertainment Law, PLLC**
6803 E Main St # 1116
Scottsdale, AZ 85251
Telephone: 480-248-0657
krystle@delgadoentertainmentlaw.com

/s/ Jarrett L. Ellzey
Jarrett L. Ellzey, Texas Bar No. 24040864
*Pro Hac Vice Admission*
Leigh S. Montgomery, Texas Bar No. 24052214
*Pro Hac Vice Forthcoming*
**EKSM, LLP**
4200 Montrose Blvd.., Suite 200
Houston, Texas 77006
Telephone: (888) 350-3931
jellzey@eksm.com
lmontgomery@eksm.com

Michael V. Glennon, BBO# 678977
Brody, Hardoon, Perkins & Kesten, LLP
265 Franklin Street, 12th Floor
Boston, MA 02110
Telephone: (617) 880-7100
mglennon@bhpklaw.com

*Attorneys for Plaintiffs and the Proposed Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/Jarrett L. Ellzey*
Jarrett L. Ellzey