UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY JUSTICE and 5TH WHEEL RECORDS, INC., *each individually and on behalf of all others similarly situated*,<br><br>                      Plaintiffs,<br><br>         v.<br><br>SUNO, INC.,<br><br>                      Defendant. | Civil Action No. 1:25-cv-11739-FDS<br><br>**Leave to File Granted on 11/14/2025** |

**REPLY MEMORANDUM IN SUPPORT OF
SUNO, INC.'S MOTION TO DISMISS**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT .....................................................................................................................2

    I.       Plaintiffs Do Not Allege Any Derivative Copies of Plaintiffs' Works. ..................2

    II.      Plaintiffs' Attempt to Rewrite the FAC Cannot Salvage Their Section 1201 Claim. ........................................................................................................6

    III.     Plaintiffs' Unfair Competition Claim Fails.............................................................11

CONCLUSION ..................................................................................................................15

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition confirms why Counts II, III, and IV should be dismissed. With respect to their derivative works claim, Plaintiffs argue that because third parties have generated allegedly infringing outputs of other rightsholders' works using Suno's AI tool, this Court may assume that Suno has done the same with respect to Plaintiffs' works. But speculation is insufficient to state a claim. To state a claim with respect to infringing outputs of Suno's model, both the Copyright Act and Rule 8 require Plaintiffs to identify the particular outputs that they allege are "substantially similar" to one of the eight specific works they are suing over. Despite having continuous access to the publicly available Suno product, Plaintiffs still have not done so.

Plaintiffs' section 1201 theory also fails. As alleged in the FAC, YouTube's "rolling cipher," which Plaintiffs repeatedly allege protects against "downloading," is a "copy control" not an "access control," and section 1201(a) prohibits circumvention of the latter, not the former. Plaintiffs' allegations confirm that YouTube content is freely accessible by the public without decryption, passwords, or other gates. Reading the statute to treat the rolling cipher as an access control because it controls "how [] works are accessed," *see* Dkt. No. 33 ("Opp.") at 18, would collapse Congress's deliberate distinction between access controls and copy controls because copy controls could be easily characterized the same way.

Finally, Plaintiffs' pivot to "common law unfair competition" cannot save Count IV. The FAC pleads a Tennessee Consumer Protection Act claim—not a common-law unfair competition claim—and the Court should not credit Plaintiffs' post hoc repleading-by-brief. Regardless, Plaintiffs' proposed unfair competition claim is preempted by the Copyright Act because it simply repackages allegations of unauthorized copying without supplying any "extra element." And the claim fails in any event, because the FAC alleges no passing off, deception, or confusion.

Dismissing these meritless claims will allow the Court (and the parties) to focus on this case's core question: whether the alleged use of Plaintiffs' copyrighted materials for the purpose of training Suno's generative AI model constitutes a transformative fair use under copyright law.

## ARGUMENT

### I. Plaintiffs Do Not Allege Any Derivative Copies of Plaintiffs' Works

Plaintiffs concede that they "have not yet presented infringing Suno outputs" that would form the basis of a claim for derivative work infringement. *See* Opp. at 6. But Plaintiffs insist that their claim should proceed because Suno theoretically *might have* generated outputs that sound like the works asserted in this action. *See id.* at 7–8.[1] Plaintiffs' position runs contrary to both copyright law and the federal pleading standards, which require Plaintiffs to actually identify the outputs that they claim are substantially similar. Plaintiffs have failed to do so, and their speculation about the possibility of infringement is insufficient to sustain their claim.

To state a viable claim that Suno has infringed their copyrights by creating unauthorized derivative works, Plaintiffs must allege that Suno created "substantially similar" copies of the works-in-suit. Dkt. No. 32 ("Br.") at 1, 7–9; *see, e.g.*, *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.2d 25, 33 (1st Cir. 2001). Though Plaintiffs do not need to *prove* substantial similarity at the pleading stage, they must at least assert facts from which a factfinder *could* determine that Plaintiffs' copyrights have been infringed through the creation of infringing outputs. *See Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting, Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008) (affirming dismissal where the complaint failed to identify any infringing work).

---

[1] Plaintiffs claim that Suno "does not dispute that its AI model generated outputs reproducing Plaintiffs' songs and other copyrighted works." Opp. at 13. Setting aside that Plaintiffs have identified no songs that even sound like their songs, this is patently false.

2

Having failed to identify any Suno-generated output that even arguably resembles their asserted works, Plaintiffs argue that the existence of infringing output can simply be assumed because: 1) Suno trained its AI model on "tens of millions" of copyrighted songs, which Plaintiffs assume may include their songs; and 2) Suno's model has created outputs that allegedly resemble the songs of *other* rightsholders. Opp. at 7, 11, 13. But even taking these allegations as true, they amount to nothing more than speculation that an unidentified infringing work *might* exist, with no information about what that work is or how it compares to the asserted works. That is insufficient. Copyright infringement claims premised on "substantial similarity" require a comparison of particular works; accordingly, at the pleading stage, plaintiffs must at least identify the specific accused copies. Courts regularly dismiss claims where the complaints are limited to conclusory assertions about one work infringing the rights in another, which makes it impossible to conduct even a threshold comparison. *See* Br. at 8–9 (collecting cases). Without identifying a particular infringing work, the FAC cannot support a derivative works claim.[2]

Plaintiffs' attempt to distinguish *National Business Development*, 299 F. App'x 509, and *Blizzard Entertainment*, 149 F. Supp. 3d 1167 (N.D. Cal. 2015), misses the mark. *See* Opp. at 14. The FAC does not identify a particular Suno-generated work that is allegedly substantially similar to the works-in-suit. That is the precise pleading defect that led to dismissal in the authorities Plaintiffs attempt to avoid: courts require identification of the accused work so that a threshold comparison can be performed, and they reject complaints that offer only conclusory claims of

---

[2] The Opposition explains that Plaintiffs "do not allege that every output generated by Suno's AI model(s)" infringes, but rather that "Suno created *certain* infringing derivative work AI outputs." Opp. at 15–16; *see also* Dkt. No. 27 ("FAC") ¶¶ 95–96 (similar). While Suno agrees that Plaintiffs could not sustain the former claim (all courts to consider this argument have rejected it, *see* Br. at 9 (collecting cases)), this admission calls into relief Plaintiffs' pleading failures: the FAC makes no reference to the "*certain*" outputs that apparently form the basis of this claim.

3

infringement untethered to any pleaded example. *Blizzard* dismissed where the plaintiffs "ma[d]e only general allegations" of derivation without identifying even representative copies, 149 F. Supp. 3d at 1175, and *National Business Development Services* affirmed dismissal where the plaintiff "failed to even allege which, if any, of defendants' materials were infringing," 299 F. App'x at 512. Here, too, the FAC makes comparison between works impossible because it fails to identify any Suno output that Plaintiffs claim is substantially similar to their songs.

The federal pleading standard also requires dismissal. Plaintiffs focus on the text of Federal Rule of Civil Procedure 8(a), arguing that they can avoid dismissal by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). *See* Opp. at 7. Though Plaintiffs briefly cite *Iqbal*, 556 U.S. 662 (2009) and *Twombly*, 550 U.S. 544 (2007), they make no effort to justify their allegations under the interpretation of Rule 8 that those cases impose. *See* Opp. at 7. The federal pleading standard has now long required that a plaintiff allege sufficient facts "to raise a right to relief above the speculative level." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 8 (1st Cir. 2011) (citing *Twombly*, 550 U.S. at 555). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 555). Plaintiffs have done no more than allege that Suno might have generated outputs that are substantially similar to their works. This does not rise above the speculative level and cannot survive Rule 12(b)(6).

Finally, Plaintiffs attempt to justify their "upon information and belief" pleading and excuse their inability to identify any specific infringement of their derivative work rights by claiming that Suno "alone has access" to "critical facts," including because "Suno's platform is closed and proprietary." Opp. at 7-8. 16. This argument is contradicted by the FAC, which

4

contains multiple paragraphs identifying Suno outputs generated by third parties that allegedly resemble *other* rightsholders'[3] songs. *See* FAC ¶¶ 252–334; *see also* ¶¶ 68, 126 (alleging Suno is a publicly available website). These allegations, while not relevant to Plaintiffs' own claim, make clear that allegedly "soundalike" outputs are not in the sole custody of Suno but, *to the extent they can actually be generated*, available to third parties. While Plaintiffs do not have access to back-end elements of Suno's tool,[4] such access is not necessary to discover allegedly infringing outputs. To the contrary, Suno's AI tool is publicly available, and it is Suno users who use the tool to create outputs. *See, e.g.*, *id.* ¶¶ 68, 70, 126. This is not a case where the relevant facts concern "insular activities where the facts may be peculiarly hard to come by," such that pleading "on information and belief" is either necessary or appropriate. *JT IP Holding, LLC v. Florence*, No. 20-cv-10433, 2020 WL 5217118, at *7 (D. Mass. Sept. 1, 2020) (dismissing claim where the plaintiffs supported their allegations only with facts pleaded "upon information and belief" and where those facts were not "peculiarly within the possession and control of the defendant"); *see also* Opp. at 16.[5]

Plaintiffs' arguments make clear what their FAC already demonstrates: they have no

---

[3] Indeed, Plaintiffs in *UMG Recordings, Inc. v. Suno, Inc.*, No. 24-cv-11611 (D. Mass.), cited a number of allegedly "soundalike" outputs in their Complaint. *See id.*, Dkt. No. 1 ¶¶ 54–67, Ex. B. Though Suno maintains that these outputs are noninfringing as a matter of law, *see id.*, Dkt. No. 28 at 8, their creation shows that Suno's outputs are not in Suno's sole possession or control.

[4] Plaintiffs' argument that "Suno's training data" is "peculiarly within the possession and control of" Suno, Opp. at 16; *see also id.* n.6 (arguing that users cannot "query [Suno's] training data to identify what recordings were used"), is irrelevant to Plaintiffs' derivative works claim, which turns on the existence of infringing *outputs*.

[5] The two additional cases Plaintiffs cite similarly do not support their position. *See Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44-45 (1st Cir. 2012) (confirming that "'[i]nformation and belief' does not mean pure speculation" and allowing "limited remand" to allow the plaintiff to explain the "narrow discovery" that would allow him to identify information about that was unavailable to him); *Lexington Ins. Co. v. Johnson Controls Fire Protection Ltd. P'ship*, 347 F. Supp. 3d 61, 63–64 n.1 (D. Mass. 2018) (accepting information pleaded on "information and belief" where only the defendant had firsthand knowledge of the alleged facts and noting that the court has "discretion to allow *limited* discovery" on those particular facts (citations omitted) (emphasis added)).

concrete basis to allege that any Suno-created output is substantially similar to their asserted works. Plaintiffs' claim relies on the kind of speculation that that the federal pleading standard rejects, particularly where, as here, the plaintiff has full access to the information they would need to state a plausible claim. Without identifying any works that allegedly infringe their derivative work rights and with no reason why they could not do so, Plaintiffs' infringement claim cannot move past the pleading stage.

## II. Plaintiffs' Attempt to Rewrite the FAC Cannot Salvage Their Section 1201 Claim

The FAC repeatedly alleges that Suno violated section 1201(a) of the DMCA—which prevents the circumvention of technological measures that control *access* to a work—by circumventing a YouTube "technical protection measure" ("TPM") put in place "to prohibit mass downloading." FAC ¶¶ 462–66, 472; *see also, e.g.*, Br. at 14–15. The issue for Plaintiffs is that a TPM that prevents copying or downloading of a work is a *copy control*, the circumvention of which is not prohibited by section 1201. *See* Br. at 11–15. In an attempt to save their section 1201 claim, Plaintiffs pivot from their allegations in the FAC and try to recast YouTube's rolling cipher as an "access control." *See* Opp. at 18–19. Plaintiffs argue that YouTube's rolling cipher is an access control because it "restrains access to the underlying video *files* and song *files*." Opp. at 19 (emphasis added). That argument fails as a matter of law.

First, controlling access to a "file" is not the same as controlling access to a "*work*," § 1201(a)(3)(B)—particularly where, as here, that "work" is readily available for users to consume without restriction. A "work," in the context of the Copyright Act, means the copyrighted expression—that is, the expressive content in a song, novel, or movie—rather than the particular "material object" in which the work is embodied. *See London-Sire Recs., Inc. v. Doe 1*, 542 F. Supp. 2d 153, 171 (D. Mass. 2008) (noting that Congress "distinguish[ed] between the abstract,

6

original work on the one hand, which is the source of the copyrights, and its material incarnation on the other"); *Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 693, 702 (2d Cir. 1998) (explaining that the Act establishes a "fundamental distinction" between a work and a copy of that work). And, here, the allegations in the Complaint establish that audiovisual content on YouTube is *not* guarded by any access control within the meaning of the statute. *See* FAC ¶ 362 ("YouTube users can stream (i.e., view) audiovisual content (the 'videos')[.]"); *see also* Opp. at 19 ("YouTube . . . permits users to stream videos[.]"). To the contrary, YouTube content is freely accessible to any member of the public for streaming without the need for logins, passwords, decryption, or the like. *See* FAC ¶ 362; Opp. at 19. While YouTube's rolling cipher presents a barrier to parties seeking to *download files* containing Plaintiffs' works (making it a copy control), it does not at all restrict or otherwise control one's ability to access those works. *See* FAC ¶¶ 371–72 ("the 'file URL' . . . is for the video file itself that is played within the page" on YouTube "visible to users" via "the 'page URL'"). On the basis of Plaintiffs' own allegations, therefore, YouTube's content is accessible without circumventing any TPM.

Second, this argument violates basic rules of statutory interpretation. Section 1201 sets forth two distinct categories of technological measures: access controls, which "control[] access to a work," and copy controls, which "protect[] a right of a copyright owner . . . in a work." *See* § 1201(a)(1)(A), (b)(1)(A). It also treats those two categories differently, prohibiting the circumvention of access controls while expressly declining to prohibit the circumvention of copy controls. *See Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1195 (Fed. Cir. 2004) (describing this asymmetry as "intentional"); *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 946 (9th Cir. 2010) ("[W]e read the differences in structure between § 1201(a) and (b) as reflecting Congress's intent to address distinct concerns by creating different rights with different

elements."). But Plaintiffs' proposed definition of "access controls" would encompass TPMs that leave the content of a work freely accessible to anyone, but merely control "how [] works are accessed," Opp. at 18—including a TPM that prevents users from "downloading," i.e., copying a work. That definition of access controls is broad enough to also cover *all copy controls*, which can just as easily be characterized as measures that control "how users may interact" with a work by (e.g.) allowing someone to view a work but prohibiting them from copying it. That, in turn, would collapse the distinction between these two distinct categories of controls and unwind Congress's careful decision to prohibit circumvention of access controls while permitting circumvention of copy controls. *See Nat'l Assn. of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007) (noting the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

The clear implication of this statutory scheme is that there must be some category of copy controls that can be circumvented under section 1201 because they are not also access controls. Plaintiffs' interpretation leaves no room for that category. To the contrary, Plaintiffs would render every copy control also an access control. Take, for instance, a mechanism that permits a user to listen to an audio tape but prevents them from making a bootleg copy of the tape—a paradigmatic copy control. *See All. of Artists and Recording Cos., Inc. v. Gen. Motors Co.*, 162 F. Supp. 3d 8, 10–11 (D.D.C. 2016) (describing such a system). Under Plaintiffs' formulation, that mechanism would also be an access control because, because while it does not "bar access" to the tape, it nonetheless sets a "restriction[] on how . . . works are accessed" by preventing the kind of access that could enable a user to make a copy. Opp. at 17–18. This approach would collapse the statutory structure by rendering copy controls a mere subset of access controls. And if all copy controls were also access controls, section 1201(a) would necessarily prohibit their circumvention. That

8

would negate Congress's decision to carve out copy controls from the statute's act-of-circumvention prohibition in order to preserve the public's right to engage in fair use of publicly accessible material. This is not a plausible interpretation of the statute.

Plaintiffs contend that the rolling cipher can be an "access control" despite the fact YouTube's content is otherwise freely accessible on the platform because "Congress intentionally chose the word control and not prevent so rightsholders could embrace online distribution while still retaining meaningful restrictions on how their works are accessed." Opp. at 18. But this argument ignores Congress's choice to define a technological measure that "effectively controls access to a work" as one that requires application of some information or a process "to *gain* access to the work." 17 U.S.C. § 1201(a)(3)(B) (emphasis added). This statutory definition indicates that the key conduct that a relevant measure must control under Section 1201(a) is "gain[ing] access" to the *work* in the first place—not subsequent access, or access to a particular format. *See supra* at 6–8. That is consistent with baseline principles of copyright and the DMCA: the key decision for the copyright owner is whether and to whom to make their work accessible in the first instance. *See* 105th Cong. 46–47, 49 (1997) (section 1201 concerned with copyright holder's choice of whether to keep their work under "lock and key," whether to "show it to others selectively," or whether to make it freely available for public access).

Nor do the cases Plaintiffs rely on support their argument. Though Plaintiffs cite *Yout*, 633 F. Supp. 3d 650 (D. Conn. 2022), they ignore that *Yout* is currently on appeal to the Second Circuit and that the Second Circuit recently ordered additional briefing to address the same arguments Suno raises here. *See* Mot. Order in *Yout, LLC v. Recording Indus. Ass'n of Am.*, No. 22-2760, Dkt. 124 (2d Cir. Oct. 10, 2025). Rather than addressing those arguments, Plaintiffs make the mistake the *Yout* court did, failing to read section 1201 in "context and with a view to

9

their place in the overall statutory scheme," *see Nat'l Assn. of Home Builders*, 551 U.S. at 666 (quotations omitted). *Kurbanov*, No. 18-cv-957, 2021 WL 6492907 (E.D. Va. Dec. 16, 2021), meanwhile, directly contradicts their position. In that case, the plaintiffs accused the defendant of operating a service designed to circumvent YouTube's "[r]olling cipher" to allow users to download "copyrighted audio recordings" from YouTube. *Id.* at *4–5. Notably, however, the *Kurbanov* plaintiffs and the court proceeded primarily on the theory that the rolling cipher was a **copy control** and that the defendant's service violated section 1201(b)'s anti-trafficking provision. *Id.* at *7. At no point did the court's reasoning suggest that the rolling cipher also qualifies as an access control.

In support of their argument, Plaintiffs cite several cases concerning DVDs, including the Ninth Circuit's decision in *VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017), arguing that. But those cases concern a suite of TPMs—referred to as a Content Scrambling System ("CSS")—that *separately* accomplish two distinct functions. CSS "control[s] access to [the] copyrighted content on DVDs" by blocking anyone who does not have a "[DVD] player[] from [a] licensed manufacturer[]" from watching it. *Id.* at 853. This is an access control: it makes it impossible for a user who does not have a DVD player to watch the DVD and access its contents. CSS *also* protects against unauthorized reproduction of the film on the DVD by limiting the use of the DVD to "playback, not for copying." *Id.* at 853. This is a copy control: it protects against copying once access has been lawfully obtained. The *VidAngel* court thus held that CSS is "both an access control and a use control" and that VidAngel had violated section 1201(a) because it used a software program, rather than a licensed DVD player, to access the encrypted content of the films on the DVDs—circumventing the TPM that controls access to the work. *VidAngel*, 869 F.3d at 853, 864.

10

Critically, *VidAngel*'s reasoning relied on the fact that the CSS actually prohibits access: the content of a film stored on a DVD is "encrypt[ed]" so that one cannot "gain access to" it without a licensed DVD player that can decrypt the file. *Id.* at 853; U.S.C. § 1201(a)(3)(B). By contrast, under Plaintiffs' allegations, YouTube makes its video content streamable without any similar restriction. Plaintiffs concede that the content of the videos Plaintiffs uploaded to YouTube can be accessed by anyone. *See* FAC ¶ 362 ("YouTube users can stream (i.e., view) audiovisual content (the 'videos')[.]"); *see also* Opp. at 19 ("YouTube . . . permits users to stream videos[.]"). That Plaintiffs use the label "access" in describing how the rolling cipher blocks "the underlying video files and song files" does not make it an access control: Plaintiffs' pleading repeatedly concedes the rolling cipher exists to protect against "downloading and copying of YouTube's videos and songs." *See id.*; FAC ¶ 379. Like the elements of CSS that prohibit downloading of DVD content, this is a copy control.

As a last resort, Plaintiffs argue that Suno's statutory interpretation would "render streaming platforms like YouTube open season for infringers." Opp. at 9. But Plaintiffs ignore that a person who makes unauthorized copies of YouTube videos could still be liable for copyright infringement (unless the specific conduct were protected by the fair use doctrine or another defense). Whether that person also violated section 1201(a) is an entirely different issue, turning on the specific requirements of that statute. The rolling cipher is a copy control that restricts downloads but does not control access to the works available on YouTube within the meaning of section 1201. Because it is not unlawful to circumvent a copy control, Plaintiffs have not stated a claim under section 1201.

### III.   Plaintiffs' Unalleged Unfair Competition Claim Fails

Having now realized that they cannot not sustain a TCPA claim, Plaintiffs respond to

Suno's Motion to Dismiss their fourth cause of action by attempting to assert a *new* claim for common law unfair competition. *See* Opp. at 24–25. That claim fails for a simple reason: it is not pleaded in the FAC. *See* FAC ¶¶ 476–85. The FAC describes Count Four as alleging a "[v]iolation of the Tennessee Consumer Protection Act," refers repeatedly to the TCPA, and invokes sections 47-18-101, 104, and 109. *See* FAC ¶¶ 476–85. This Court should not countenance Plaintiffs' attempt to recast their citations to the TCPA as "inadvertent" in order to change the basis of their claim. *See* Opp. at 24. Suno has already explained why Plaintiffs' TCPA claim fails, *see* Br. at 15–20, and Plaintiffs do not appear to dispute these arguments. Plaintiffs' fourth cause of action should therefore be dismissed for any number of the reasons articulated in Suno's opening brief.

Even if this Court were to entertain Plaintiffs' common law claim, the result would be the same—for many of the same reasons that Plaintiffs could not state a TCPA claim as a matter of law. Plaintiffs say that their common law unfair competition claim would rely on the facts currently asserted in the FAC, *see* Opp. at 24, but the legal claim Plaintiffs are making is utterly confused. Among other elements, unfair competition requires that "the defendant engaged in conduct that 'passed off' its organization or services as that of the plaintiff." *Moore v. Weinstein Co., LLC*, No. 09-cv-00166, 2012 WL 1884758, at *45 (M.D. Tenn. May 23, 2012) (citing *Sovereign Ord. of Saint John of Jerusalem, Inc. v. Grady*, 119 F.3d 1236, 1243 (6th Cir. 1997)). The FAC is devoid of any allegation that Suno "passed off" Suno's services as those of *Plaintiffs'*. To the contrary, Plaintiffs' claim appears to be that Suno passed off *Plaintiffs'* works as belonging to *Suno*. *See* Opp. at 25 (alleging that Suno "passed off the fruits of Subclass members' labor as its own"). This is not passing off, but rather reverse passing off. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003) (describing reverse passing off).

Even assuming that common law unfair competition could encompass a reverse passing

off theory (Plaintiffs cite no support for that proposition), Plaintiffs' claim is preempted by the Copyright Act.  Plaintiffs argue that Suno unfairly competed by "bypassing existing, voluntary opt-in licensing systems" to train its AI model and "repurposing Plaintiffs' creative works to build and market its own AI services."  Opp. at 24–25; *see also id.* at 26 (alleging that "Suno's conduct [of using their songs to train its AI tool] deprived them of attribution, credit, and compensation while reaping the commercial benefits of their labor").  In other words, Plaintiffs' allegation is that Suno copied their songs without authorization—copying that resulted in Suno-created outputs that compete with Plaintiffs'.  This claim sounds in copyright law, which grants copyright owners the exclusive right to control the "reproduc[tion]" and "prepar[ation] of derivative works based upon" their copyrighted works and gives them recourse for unauthorized reproductions.  *See* 17 U.S.C. § 106(1), (2).

As with their TCPA claim, Plaintiffs' common law unfair competition claim involves no "extra element" beyond what would be required for an infringement cause of action—that is, proof of actionable "copying" or "preparation of derivative works" without authorization.  *See* Br. at 16–17 (describing preemption standard).  Other courts considering similar unfair competition claims—including the court in *Brainard*, 625 F. Supp. 2d 608 (M.D. Tenn. 2009), one of the cases Plaintiffs cite—have come to the same conclusion, determining that a state law claim alleging that the defendant copied a copyrightable work and presented the copied work as its own is preempted by federal copyright law.  *See, e.g.*, 625 F. Supp. 2d at 622 (finding that a claim that "defendants used the plaintiffs' [songs] as their own" was preempted); *Clever Factory, Inc. v. Kingsbridge Int'l, Inc.*, No. 11-cv-1187, 2013 WL 5375258, at *9 (M.D. Tenn. Sept. 24, 2013) (finding that "a claim for unfair competition brought under Tennessee common law that is based upon the sale of knock-off or passed-off works protected under the Copyright Act is preempted by the Copyright

Act"); *Feldman v. Twentieth Century Fox Film Corp.*, 723 F. Supp. 2d 357, 368 (D. Mass. 2010) (collecting cases and holding that state law unfair competition claim "based on the same conduct as [the plaintiff's] copyright claim" was preempted); 1 Nimmer on Copyright § 1.15 (noting the "legions of cases [that] have held preempted claims for . . . unfair competition"); *see also Tremblay v. OpenAI, Inc.*, 742 F. Supp. 3d 1054, 1058 (N.D. Cal. 2024) (finding preempted state law claim whose basis was "the unauthorized copying and use of" the plaintiffs works to train AI tool). The same conclusion is warranted here.

Plaintiffs' attempt to distinguish their unfair competition claim on the basis that "the injury lies in the unfair market advantage Suno obtained by using Plaintiffs' creative identity and output to compete against them," Opp. at 26, does not move the needle. That Plaintiffs claim a particular form of injury from Suno's alleged use of their songs does not change that the conduct they have alleged is copyright infringement and that their proposed state law cause of action is therefore preempted. *See Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1164 (1st Cir. 1994) (noting that a state law claim "will not escape preemption . . . simply because a plaintiff must prove that copying was not only unauthorized but also commercially immoral" (citation and alterations omitted)); *see also Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 972 (N.D. Cal. 2024) (finding unjust enrichment claim alleging that the defendant used the plaintiff's works to train an AI model and deprived the plaintiff of the "benefit of the value of their works" preempted).[6] Because Plaintiffs' proposed common law unfair competition claim alleges nothing more than unauthorized use of their copyrighted works, it is preempted by the Copyright Act.

---

[6] Plaintiffs' citation to *Data General*, *see* Opp. at 26, does not support their arguments. There, the Court held that the plaintiff's misappropriation of trade secrets claim was not preempted because it relied on the plaintiff's allegation that the defendant "participat[ed] in the breach of a duty of confidentiality." *Data Gen.*, 36 F.3d at 1165. Plaintiffs here have alleged no such breach.

Finally, even if Plaintiffs' claim were not preempted, Plaintiffs have not adequately alleged unfair competition. The issue that proves fatal is the same as for Plaintiffs' infringement claim (and their TCPA claim): across 66 pages and nearly 500 paragraphs, Plaintiffs do not identify a single instance in which Suno generated a song that sounds like Plaintiffs' asserted works—much less an instance in which Suno attempted to "pass off" such an output as its own. *See PHG Techs., LLC v. St. John Companies, Inc.*, 459 F. Supp. 2d 640, 645 (M.D. Tenn. 2006) (dismissing unfair competition claim with prejudice because the plaintiff did not allege that the defendant "pass[ed] off" its products or services as the plaintiff's). Nor have Plaintiffs alleged that Suno intended to deceive the public as to the source of its services or that any member of the public has actually been confused or deceived—the other two elements required for unfair competition. *See Moore*, 2012 WL 1884758, at *45. Having apparently abandoned their TCPA claim, Plaintiffs cannot now shoehorn their allegations into a new cause of action under Tennessee common law for which they have no factual or legal basis.

Plaintiffs' Opposition makes clear that the conduct for which they seek to recover is Suno's alleged unlicensed use of their songs to train its AI tool. While this conduct may amount to copyright infringement, Plaintiffs have not asserted any facts that would establish common law unfair competition. Regardless of whether the claim arises under the TCPA or common law, the Court should dismiss Plaintiffs' fourth cause of action.

## **CONCLUSION**

For the foregoing reasons and those articulated in the Opening Brief, Suno respectfully requests that the Court dismiss with prejudice Plaintiffs' Second, Third, and Fourth Causes of Action for failure to state a claim.

| | |
|---|---|
| Dated: November 21, 2025 | Respectfully submitted,<br><br>*/s/ Brittany N. Lovejoy*<br>Andrew M. Gass (*pro hac vice*)<br>Brittany N. Lovejoy (*pro hac vice*)<br>LATHAM & WATKINS LLP<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111-6538<br>Telephone: (415) 391-0600<br>Facsimile: (415) 395-8095<br>andrew.gass@lw.com<br>britt.lovejoy@lw.com<br><br>Grace McLaughlin (*pro hac vice*)<br>LATHAM & WATKINS LLP<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>grace.mclaughlin@lw.com<br><br>Shlomo Fellig (BBO# 699643)<br>LATHAM & WATKINS LLP<br>200 Clarendon Street<br>Boston, MA 02116<br>Telephone: (617) 948-6000<br>Facsimile: (617) 948-6001<br>shlomo.fellig@lw.com<br><br>*Counsel for Defendant Suno, Inc.* |

**CERTIFICATE OF SERVICE**

      I hereby certify that this document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent November 21, 2025 to those identified as non-registered participants.

                                                                */s/ Brittany N. Lovejoy*
                                                                Brittany N. Lovejoy