# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

SONY MUSIC ENTERTAINMENT, ET AL.,    :

                  Plaintiffs,    :

    -against-    :

UNCHARTED LABS, INC., ET AL.,    :

                  Defendants.    :

---------------------------------------------------------------- x

**ORDER AND OPINION
DENYING DEFENDANTS'
MOTION TO DISMISS**

24 Civ. 4777 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiffs, a collection of record companies and recorded music businesses, filed suit against Defendants Unchartered Labs, Inc., d/b/a Udio.com ("Udio"), and John Does 1-10, on June 24, 2024, alleging copyright infringement and circumvention of technological Measures. *See* ECF No. 119. I have subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. Defendants move to dismiss Plaintiffs' third cause of action, circumvention of technological measures in violation of the Digital Millennium Copyright Act ("DMCA"). *See* ECF No. 19.

## FACTUAL BACKGROUND

Plaintiffs are record companies and recorded music businesses that produce, manufacture, distribute, sell, license, and commercialize recordings in the United States and around the world through various media. *See* ECF No. 119 at ¶¶ 17-29. Defendant Uncharted Labs, Inc. d/b/a Udio ("Udio") is a Delaware corporation with its principal place of business in New York, New York. *See id.* at ¶ 33. Udio, which launched on April 10, 2024, engages in AI music generation services, allowing users to enter text prompts or audio clips to generate digital music files. *See id.* at ¶¶ 38-39. Users can prompt Udio with descriptions, genres, lyrics, and themes to generate outputs and then edit them through a 'remix' feature. *See id.* at ¶ 39. Udio offers both free and subscription services to users, which correspond to varying limits on

1

possible inputs and outputs. *See id.* at ¶ 39-41. Defendants John Does 1-10 are unknown parties who allegedly copied Plaintiffs' sound recordings and worked with, or have knowledge of, Udio's purported infringements. *See id.* at ¶ 32.

Plaintiffs allege Udio trains its generative AI models on millions of copyrighted sound recordings without permission from rightsholders, including Plaintiffs themselves. *See id.* at ¶ 42. Plaintiffs allege Udio obtained these files by unlawfully pirating sound recordings from YouTube and circumventing technologies designed to prevent unauthorized copying in a process known as "stream ripping." *See id.* at ¶ 42-43, 51-58. Plaintiffs further allege that after Udio copies massive numbers of sound recordings from digital sources, like YouTube, they utilize those files to form the input, or "corpus," upon which Udio AI models are trained, then cleaning the input data before copying and encoding the sound recordings into formats that can be used and ingested by the AI models to train them to create outputs. *See id.* at ¶ 43.

Specifically, Plaintiffs allege that YouTube, which allows users to stream content, is not designed to allow, and in fact prohibits, making permanent unrestricted copies of the content it streams. *See id.* at 52. Plaintiffs assert that YouTube's Terms of Service generally prohibit the unauthorized use of recordings available on its platform. *See id.* at ¶ 53. Plaintiffs claim YouTube employs technological measures, including a "rolling cipher" encryption measure, to control access to content uploaded on its platform and prevent or inhibit external sites or services from directly downloading protected media files. *See id.* at ¶ 53. Despite this, Plaintiffs claim that there are illicit tools and services that can circumvent YouTube's encryption mechanism and download audiovisual content to create copies for download and distribution. *See id.* at ¶ 54. As noted, this process is known as "stream ripping." *See id.* at ¶ 54. Plaintiffs allege Udio utilizes such a tool, YT-DLP, to engage in stream ripping and scrape copyrighted content from YouTube in a manner that independently violates copyright law. *See id.* at ¶ 54-58.

2

Plaintiffs contend Udio's AI generative model training process gives Udio's service the capacity to generate audio outputs that are the products of the corpus of sound recordings on which they are trained, allowing for the creation of convincing imitations of human music. *See id.* at ¶ 44, 46. Plaintiffs allege that Udio's founders and officers have all but admitted that it trains its models on their sound recordings. *See id.* at ¶ 47.

Defendants move to dismiss Plaintiffs' third cause of action, circumvention of technological measures, wherein Plaintiffs allege Defendants' stream ripping process constitutes a violation of 17 U.S.C. § 1201(a), causing harm to Plaintiffs and entitling them to statutory or actual damages, reasonable costs, and attorneys' fees. *See id.* at ¶ 118-125.

## STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While considering a motion to dismiss, the Court must accept all of the complaint's factual allegations as true and draw all reasonable inferences in the pleader's favor. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993).

## DISCUSSION

### I.    17 U.S.C. § 1201

Defendants' motion to dismiss turns on the meaning of 17 U.S.C. § 1201(a) and (b). Section 1201 distinguishes between two types of technological protection measures ("TPMs"). While "both subsections prohibit trafficking in a circumvention technology, the focus of subsection 1201(a)(2) is circumvention of technologies designed to *prevent access* to a work

3

[commonly called "access controls"], and the focus of subsection 1201(b)(1) is circumvention of

technologies designed to *permit access* to a work but *prevent copying* of the work or some other

act that infringes a copyright [commonly called "copy controls"]." *Universal City Studios, Inc.*

*v. Corley*, 273 F.3d 429, 441 (2d Cir. 2001) (emphasis in original). The statute is as follows:

> "(a) Violations regarding circumvention of technological measures.
>> []--(1)(A) No person shall circumvent a technological measure that effectively controls access to a work protected under this title…
>> (2) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that--
>>> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title…
>
> (b) Additional violations.
>> []--(1) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—
>>> (A) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof…

17 U.S.C. § 1201.

"[T]o "circumvent a technological measure" means to descramble a scrambled

work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair

a technological measure, without the authority of the copyright owner." 17 U.S.C. §

1201(a)(3)(A). A "technological measure "effectively controls access to a work" if the measure,

in the ordinary course of its operation, requires the application of information, or a process or a

treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. §

1201(a)(3)(B).

In short, the statute contains a prohibition on the circumvention of access controls,

*see* § 1201(a)(1), but does not prohibit the circumvention of copy controls. Trafficking in access

or copy controls is prohibited. *See* 17 U.S.C. §§ 1201(a)(2), (b)(1); *Universal City Studios, Inc.*

*v. Corley*, 273 F.3d 429, 441 (2d Cir. 2001) ("Subsection 1201(a)(1) differs from both of these

4

anti-trafficking subsections in that it targets the use of a circumvention technology, not the trafficking in such a technology."); *see also* U.S. Copyright Office, Section 1201 of Title 17: A Report of the Register of Copyrights, at 6-7 (June 2017).

## II.   Application

To state a Section 1201(a) claim, Plaintiffs must allege both that YouTube's rolling cipher is a "technological measure that effectively controls access" to copyrighted works and that Udio "circumvented" that technological measure. *See In re OpenAI, Inc. Copyright Infringement Litig.*, No. 25-CV-4315, 2025 WL 3635559, at *4 (S.D.N.Y. Dec. 15, 2025); 17 U.S.C. § 1201(a)(1).

The parties do not dispute that the DMCA imposes different statutory treatments on access controls and copy controls. *See* ECF Nos. 125 at 6-7; 127 at 21. Defendants claim that Plaintiffs' description of YouTube's 'rolling cipher' constitutes a copy control and that they have failed to adequately plead circumvention of an access control. *See* ECF No. 125 at 13-14. Plaintiffs argue that TPMs can qualify as both an access control and a copy control and that they have adequately pleaded that YouTube's 'rolling cipher' behaves in such a way here. *See* ECF No. 127 at 3, 19-23.

In support of their contention, Plaintiffs cite a line of cases involving encryption on DVDs, where courts have held that circumvention of encryption technology violated § 1201(a) even though purchasers could lawfully view the content using licensed players. *See id.* at 15 (*citing Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 441, 444-45 (2d Cir. 2001); *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 863-65 (9th Cir. 2017); *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1096 (N.D. Cal. 2004)). Plaintiffs compare YouTube's TPMs to those employed in DVDs. *See id.* at 15; *see also* ECF No. 119 at ¶ 53.

5

Defendants distinguish YouTube from cases involving DVD players on the ground that the relevant technological measures operate differently. *See* ECF No. 133 at 8. However, the Complaint does not establish how those measures function sufficiently to determine their legal classification or whether the asserted distinction is dispositive. Therefore, the Court cannot resolve the statutory question at this stage.[1]

Accepting the facts in the complaint and drawing all reasonable inferences in Plaintiffs' favor, I hold the Complaint plausibly alleges that YouTube employs technological measures that regulate access to its content and that Defendant circumvented them under the pleading standard set by Rule 8(a) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a). Whether YouTube's measures ultimately constitute access controls within the meaning of § 1201 requires a greater factual record than the pleadings contain. Defendants may renew their arguments after a factual record is developed.

### CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Plaintiffs' Third cause of action is denied.

The parties will appear at a telephonic status conference to be held on May 29, 2026, at 10:00 a.m. Dial-in information will be made available in advance.

The Clerk shall terminate ECF No. 124.

SO ORDERED.

Dated:    April / / 2026
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

---

[1] In their filings, both parties reference *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650 (D. Conn. 2022), *appeal pending*, No. 22-2760 (2d Cir.), which presents relevant questions to those before me. "My duty is to apply the law as it currently stands, rather than to attempt to predict" future appellate court rulings on the issue. *United States v. Paldiel*, 2025 WL 524659, at 9 n.4 (E.D.N.Y. Feb. 18, 2025). The parties may raise any future decision in *Yout* at later stages of these proceedings, if applicable.